724 A.2d 889

**Basile PAPPAS and Theodora Pappas, H/W, Plaintiffs,**

**v.**

**David S. ASBEL, D.O., Defendant.**

**Pennsylvania Hospital Insurance Co. (PHICO) and the Commonwealth of Pennsylvania Medical Professional Liability Catastrophe Loss Fund (Cat Fund), Defendants/Appellees,**

**v.**

**United States Healthcare Systems of Pennsylvania, Inc., Additional Defendant/ Appellant.**

Supreme Court of Pennsylvania.

Argued April 30, 1997.

Decided Dec. 23, 1998.

Reargument Denied Feb. 12, 1999.

David H. Marion, Francis Patrick Newell, Philadelphia, for US Healthcare Systems of PA.

Stephen A. Ryan, for PA Hosp. Ins. & Commonwealth.

James E. Colleran, Philadelphia, for Basile and Theodora Pappas.

James I. Devine, Philadelphia, for David S. Asbel, D.O.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, and NEWMAN, JJ.

## OPINION OF THE COURT

CAPPY, Justice.

This is an appeal from the order of the Superior Court reversing the trial court's entry of summary judgment in favor of third-party defendant United States Healthcare Systems of Pennsylvania, Inc. ("U.S. Healthcare"). The issue on which this court granted allocatur is whether the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. 1001, *et seq.*, preempts the state tort law claims brought against U.S. Healthcare. For reasons which differ from those relied upon by the Superior Court, we find that ERISA does not preempt these claims. We therefore affirm the order of the Superior Court.

At 11:00 a.m. on May 21, 1991, Basile Pappas ("Pappas") was admitted to Haverford Community Hospital ("Haverford") through its emergency room complaining of paralysis and numbness in his extremities. At the time of his admission, Pappas was an insured of HMO–PA, a health maintenance organization operated by U.S. Healthcare.

Dr. Stephen Dickter, the emergency room physician, concluded that Pappas was suffering from an epidural abscess which was pressing on Pappas' spinal column. Dr. Dickter consulted with a neurologist and a neurosurgeon; the physicians concurred that Pappas' condition constituted a neurological emergency. Given the circumstances, Dr. Dickter felt that it was in Pappas' best interests to receive treatment at a university hospital.

Dr. Dickter made arrangements to transfer Pappas to Jefferson University Hospital ("Jefferson") for further treatment. At approximately 12:40 p.m. when the ambulance arrived, Dr. Dickter was alerted to the fact that U.S. Healthcare was denying authorization for treatment at Jefferson. Ten minutes later, Dr. Dickter contacted U.S. Healthcare to obtain authorization for the transfer to Jefferson. At 1:15 p.m., U.S. Healthcare responded to Dr. Dickter's inquiry and advised him that authorization for treatment at Jefferson was still being denied, but that Pappas could be transferred to either

Hahnemann University ("Hahnemann"), Temple University or Medical College of Pennsylvania ("MCP").

Dr. Dickter immediately contacted Hahnemann. That facility advised Haverford at approximately 2:20 p.m. that it would not have information on its ability to receive Pappas for at least another half hour. MCP was then reached and within minutes it agreed to accept Pappas; Pappas was ultimately transported there at 3:30 p.m. Pappas now suffers from permanent quadriplegia resulting from compression of his spine by the abscess.

Pappas and his wife filed suit against Dr. David Asbel, his primary care physician, and Haverford. They claimed that Dr. Asbel had committed medical malpractice and that Haverford was negligent in causing an inordinate delay in transferring him to a facility equipped and immediately available to handle his neurological emergency.

Haverford then filed a third party complaint against U.S. Healthcare, joining it as a party defendant for its refusal to authorize the transfer of Pappas to a hospital selected by the Haverford physicians. Dr. Asbel also filed a cross-claim against U.S. Healthcare seeking contribution and indemnity.

U.S. Healthcare filed a motion for summary judgment on all of the third party claims, alleging that the third party claims are preempted by § 1144(a) of ERISA.[1] The trial court granted the motion.[2] The Superior Court on appeal, however, determined that ERISA did not preempt the state law claims. This court subsequently granted U.S. Healthcare's Petition for Allowance of Appeal in order to determine whether these third party claims fall within the scope of those state actions which are preempted by ERISA.

1. It is uncontested that U.S Healthcare is an "employee benefits plan" pursuant to ERISA, 29 U.S.C. § 1002(1), and that ERISA therefore applies to this matter.

2. Approximately one year after the trial court granted summary judgment in U.S. Healthcare's favor, Dr. Asbel and Haverford settled the actions brought against them. They have been substituted in this appeal by their insurers, Pennsylvania Hospital Insurance Co. ("PHICO") and the Commonwealth of Pennsylvania Medical Professional Liability Catastrophic Loss Fund ("CAT Fund").

In reviewing whether a trial court's award of summary judgment was appropriate, we view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Pennsylvania State University v. County of Centre*, 532 Pa. 142, 144–145, 615 A.2d 303, 304 (1992). Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. *Skipworth v. Lead Industries Assoc., Inc.*, 547 Pa. 224, 230, 690 A.2d 169, 171 (1997). As the issue presented in this case is one of law, our scope of review is plenary. *See Phillips v. A–BEST Products Co.*, 542 Pa. 124, 130, 665 A.2d 1167, 1170 (1995).

Our analysis begins with a review of the basic principles of preemption law. The Supremacy Clause of the United States Constitution provides that the laws of the federal government "shall be the supreme Law of the Land; ... any Thing in the Constitution or Laws of any state to the Contrary notwithstanding." U.S. Const., art. VI, cl. 2. It is this clause which gives to the United States Congress power to preempt state law.

■ In determining whether state law is preempted by a federal law, a reviewing court is cautioned that such a review "start[s] with the assumption that the historic police powers of the States [are] not to be superseded by ... Federal Act unless it [is] the clear and manifest purpose of Congress." *Cipollone v. Liggett Group*, 505 U.S. 504, 516, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407, 422 (1992) (citations omitted). Thus, Congress' intent is the "ultimate touchstone" in this analysis. *Id.*

■ A state law can be preempted in one of three ways. The first is where the United States Congress enacts a provision expressly preempting state law. *Pacific Gas and Electric Co. v. State Energy Resources Conservation and Development Comm'n*, 461 U.S. 190, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983). Even where there is no explicit preemp-

tion provision, preemption will still be found where Congress has legislated the field so comprehensively that it has implicitly communicated the intent to occupy a given field to the exclusion of state law. *Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293, 299–300, 108 S.Ct. 1145, 1150–51, 99 L.Ed.2d 316, 325 (1988). Finally, a state law will be preempted where a state law actually conflicts with federal law. *Id. See also Cellucci v. General Motors Corp.*, 550 Pa. 407, 706 A.2d 806, (1998).

■ It is this first method of preemption which is at issue in this matter. The express preemption provision in question states that "the provisions of this subchapter . . . shall supersede any and all State laws[3] insofar as they may now or hereafter relate to any employee benefit plan. . . ." 29 U.S.C. § 1144(a).

None of the parties in this matter dispute that the United States Supreme Court has yet to speak directly to the issue of whether negligence claims against a health maintenance organization "relate to" an ERISA plan. U.S. Healthcare, however, cites to several United States Supreme Court cases from the 1980's and early 1990's as support for its contention that these claims should be preempted by ERISA.

U.S. Healthcare is indeed accurate in its claim that the Supreme Court had given the ERISA preemption provision an almost breathtaking scope in the 1980's and early 1990's. The Court stated that the preemption provisions were "deliberately expansive". *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 46, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39, 49 (1987). The Court at that time held the opinion that "[t]he breadth of [§ 1144(a)'s] preemptive reach is apparent from that section's language." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96, 103 S.Ct. 2890, 2899–2900, 77 L.Ed.2d 490, 501 (1983). It declared that the words of the preemption provision were to be given their

---

**3.** "State law" was defined by Congress as including "all laws, decisions, rule, regulations, or other State action having the effect of law." 29 U.S.C. § 1144(c)(1). It is uncontested that a decision handed down by a state court, which would enter the common law of that state, is a "State law" as defined by ERISA.

"broad common-sense meaning, such that a state law 'relate[s] to' a benefit plan in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 739, 105 S.Ct. 2380, 2388, 85 L.Ed.2d 728, 740 (1985) (citations omitted). In the vast majority of cases concerning ERISA preemption addressed by the Court during this period, it was found that the state laws being reviewed had some "connection with" or "reference to" the ERISA plan. Although the Court did concede that the ERISA preemption provision "perhaps [is] not the model of legislative drafting" that the Court would hope for, *Pilot Life,* 481 U.S. at 46, 107 S.Ct. at 1552, 95 L.Ed.2d at 47, the Court in the 1980's and early 1990's did not admit to any possibility that the plain meaning of the words of the preemption provision could not be given effect.

The Court noticeably changed tack in *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995). In *Travelers,* the unanimous Court determined that a New York statute which required hospitals to collect surcharges from patients covered by all commercial insurers other than Blue Cross/Blue Shield was not preempted by ERISA. After years of striving to make sense of the plain language of the preemption provision, the Court frankly admitted that the text is "unhelpful". *Id.* at 656, 115 S.Ct. at 1677, 131 L.Ed.2d at 705. The Court recognized that "[i]f 'relate to' were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes pre-emption would never run its course, for '[r]eally, universally, relations stop nowhere.' " *Id.* at 655, 115 S.Ct. at 1677, 131 L.Ed.2d at 705 (citations omitted). The Court reasoned that the language of the preemption provision is so extensive that if the Court were to look merely to the bare language of the provision, the provision would for all intents and purposes be without limit—an intent which the Court would not ascribe to Congress. *Id.* The Court concluded that "we have to recognize that our prior attempt to construe the phrase 'relate to' does not give us much help in drawing the line here," and that it "must go beyond the

unhelpful text and the frustrating difficulty of defining its key term, and look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive." *Id.* at 656, 115 S.Ct. at 1677, 131 L.Ed.2d at 705.

The Court determined that the "basic thrust of the preemption provision ... was to avoid a multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans." *Id.* at 657, 115 S.Ct. at 1677–1678, 131 L.Ed.2d at 706. It recognized fairly significant bounds on the preemption provision when it stated that "[p]re-emption does not occur ... if the state law has only a tenuous, remote, or peripheral connection with covered plans, as in the cases with many laws of general applicability. " *Id.* at 661, 115 S.Ct. at 1680, 131 L.Ed.2d at 708–709 (citation omitted). The Court also cautioned that "nothing in the language of [ERISA] or in the context of its passage indicates that Congress chose to displace general health care regulation, which historically has been a matter of local concern." *Id.* at 661, 115 S.Ct. at 1680, 131 L.Ed.2d at 709 (citations omitted).

The cases following *Travelers* have continued this trend. In *California Division of Labor Standards Enforcement v. Dillingham Construction, NA., Inc.,* 519 U.S. 316, 117 S.Ct. 832, 136 L.Ed.2d 791 (1997), the majority relied upon *Travelers* to find that a California prevailing wage law was not preempted by ERISA. It is in the concurring opinion authored by Mr. Justice Scalia, however, that we find the most cogent recognition that the law of ERISA preemption had, in effect, been changed by *Travelers.* Mr. Justice Scalia opined that the cases from the 1980's and early 1990's, which were premised upon the now rejected notion that the plain language of the ERISA preemption provision could be given effect, were superannuated. He reproached the Court for not forthrightly acknowledging that the holdings of these older cases "have in effect been abandoned." *Id.* at 335, 117 S.Ct. at 843, 136 L.Ed. at 806 (Scalia, J., concurring). He believed that since *Travelers* recognized that literal interpretation of the provision "relate to" was unworkable, then earlier cases which

concluded that the plain language of the preemption provision justified findings that the provision had "broad scope" and was "conspicuous for its breadth" were simply no longer good law. *Id.*

This new position on ERISA preemption was reiterated in *De Buono v. NYSA–ILA Medical and Clinical Services Fund,* 520 U.S. 806, 117 S.Ct. 1747, 138 L.Ed.2d 21 (1997). The question presented in *De Buono* was whether a New York gross receipts tax could be applied to hospitals operated by ERISA plans. The Court again stated that the language "relates to" was unhelpful and that it must instead explore Congress' intent in enacting ERISA in order to determine if a state law would indeed fall within ERISA's preemptive scope. *Id.* at 812, 117 S.Ct. at 1751, 138 L.Ed.2d at 29. The Court determined that the gross receipts tax was not preempted by ERISA because it was "one of myriad state laws of general applicability that impose (sic) some burdens on the administration of ERISA plans but nevertheless do not 'relate to' them within the meaning of the governing statute.... Any state tax, or other law, that increases the cost of providing benefits to covered employees will have some effect on the administration of ERISA plans, but that simply cannot mean that every state law with such an effect is pre-empted by the federal statute." *Id.* at 815–816, 117 S.Ct. at 1752–1753, 138 L.Ed.2d at 30–31 (citations omitted).[4]

Thus, although U.S. Healthcare is correct when it states that U.S. Supreme Court decisions from the 1980's and early 1990's support its position that the preemption provision is to be read broadly, *Travelers* and its progeny have thrown the

---

**4.** We note that another case concerning ERISA preemption was decided the same day *De Buono* was handed down. *Boggs v. Boggs,* 521 U.S. 1138, 118 S.Ct. 9, 138 L.Ed.2d 1043 (1997). *Boggs,* however, does not lend anything to the analysis of the matter *sub judice.* In *Boggs,* the Court determined that Louisiana common law was preempted as it was in direct conflict with §§ 1055 and 1056 of ERISA, substantive provisions which limit the alienability of pension plan benefits from a surviving spouse. In this matter, it is not asserted that a claim of negligence lodged against an HMO is in conflict with any substantive provision of ERISA.

expansive holdings of those earlier cases into question.[5] We thus believe that it would be improper to adopt U.S. Healthcare's position that we must reflexively interpret the preemption provision in the broadest possible manner. Instead, we believe that the proper course of action is to follow the reasoning contained within the *Travelers* line of cases, even though we recognize that the Court's earlier cases have not been expressly overruled.

Based upon our interpretation of the *Travelers* line of cases, we conclude that negligence claims against a health maintenance organization do not "relate to" an ERISA plan. As noted by *Travelers*, Congress did not intend to preempt state laws which govern the provision of safe medical care. *Travelers*, 514 U.S. at 661, 115 S.Ct. at 1680, 131 L.Ed.2d at 709. Claims that an HMO was negligent when it provided contractually-guaranteed medical benefits in such a dilatory fashion that the patient was injured indisputably are intertwined with the provision of safe medical care. We believe that it would be highly questionable for us to find that these claims were preempted when the United States Supreme Court has stated that there was no intent on the part of Congress to preempt state laws concerning the regulation of the provision of safe medical care.[6]

**5.** U.S. Healthcare also cites to a number of circuit court decisions which have held that claims against HMOs are preempted by ERISA. *Corcoran v. United HealthCare, Inc.*, 965 F.2d 1321 (5th Cir.1992); *Tolton v. American Biodyne, Inc.*, 48 F.3d 937 (6th Cir.1995); *Kuhl v. Lincoln Nat'l Health Plan of Kansas City, Inc.*, 999 F.2d 298 (8th. Cir.1993); *Spain v. Aetna Life Ins. Co.*, 11 F.3d 129 (9th Cir.1993); *Cannon v. Group Health Service of Oklahoma, Inc.*, 77 F.3d 1270 (10th Cir.1996). Yet, the bulk of these cases were handed down prior to *Travelers*. The only one of these cases which was decided subsequent to *Travelers*—*Cannon*—fails even to mention *Travelers*. Since we find the recent trend of the Supreme Court to be so compelling, it would be inappropriate for us to utilize the reasoning of these courts of appeal cases as they fail to discuss the *Travelers* line of decisions.

**6.** The Superior Court below, in reasoning that ERISA does not preempt negligence claims lodged against HMOs, stated that "[c]onsiderations of cost containment of the type which drive the decision making process in HMO's did not exist for employee welfare plans when ERISA was enacted." *Pappas v. Asbel*, 450 Pa.Super. 162, 171, 675 A.2d 711, 716 (1996). The Superior Court concluded that Congress could not have

Furthermore, we believe that negligence laws have "only a tenuous, remote, or peripheral connection with [ERISA] covered plans, as in the cases with many laws of general applicability," *Travelers*, 514 U.S. at 661, 115 S.Ct. at 1680, 131 L.Ed.2d at 708–709, and therefore are not preempted. We acknowledge that by allowing negligence claims, there will be a financial impact on HMOs. Yet, that is not enough to countermand the conclusion that these claims are not preempted. As noted by the *De Buono* Court, an incidental increase in the costs imposed on an ERISA plan will not mandate a finding of preemption. *De Buono*, 520 U.S. at 815–816, 117 S.Ct. at 1752–1753, 138 L.Ed.2d at 30–31.

For the foregoing reasons, we conclude that ERISA does not preempt the claims in question. The order of the Superior Court is affirmed.[7]

Justice NIGRO files a concurring opinion.

NIGRO, Justice, concurring.

I concur in the result reached by the Majority. I agree that the *Traveler's* line of cases in the United States Supreme Court supports the proposition that issues raising ERISA preemption are to be narrowly construed. I write separately, however, to explain why the present negligence claim against

intended to preempt that which it did not know would come into existence.

We find that we are unable to adopt this reasoning that the modern day HMO was unforeseen by Congress when it drafted ERISA. Just one year preceding the enactment of ERISA, Congress enacted the Health Maintenance Organization Act of 1973, 42 U.S.C. § 300e *et seq.* The HMOs described in that act are too similar to a contemporary HMO for us to conclude that Congress, when crafting ERISA, was ignorant of the cost containment procedures utilized by HMOs.

7. We also note that U.S. Healthcare puts great effort into arguing that it is not the negligent party here, and that Haverford and the physicians involved are solely responsible for the Pappas' injuries. U.S. Healthcare may ultimately be vindicated on these claims, but this is not the proper stage for these arguments. The issue with which we are concerned in this case is whether the claims against U.S. Healthcare are preempted; we have determined that they are not. It is now left for the fact-finder to determine if U.S. Healthcare's defenses to the negligence claims are valid.

U.S. Healthcare falls outside that narrow construction and is therefore not preempted. Here, the defendant physician and hospital brought U.S. Healthcare into the action claiming that it was U.S. Healthcare's refusal to authorize a medically necessary transfer which caused plaintiff's ultimate injury. Based upon the facts set forth in the Majority Opinion, I find that U.S. Healthcare's actions constituted, in effect, an individual medical decision or judgment as opposed to a decision affecting the administration of an employee benefit plan. Here, the parties are merely attempting to assert their already existing rights under the generally applicable state law of agency and tort. *See Dukes v. U.S. Healthcare, Inc.*, 57 F.3d 350, 358 (3d Cir.1995), *cert. denied.*, 516 U.S. 1009, 116 S.Ct. 564 (1995).

The federal courts have addressed issues similar to the present matter. *Independence HMO, Inc. v. Smith,* 733 F.Supp. 983 (E.D.Pa.1990), presented an analogous situation as the injured party sued her HMO after receiving negligent medical treatment from a physician on its approved list. The *Smith* court, in finding the plaintiff's action was not preempted, stated that such a state tort action did not " 'impact upon' an employee benefit plan or 'affect the Congressional scheme contained in [ERISA]'." *Id.* at 988.

Moreover, as the Third Circuit recently explained, "patients enjoy the right to be free from medical malpractice regardless of whether or not their medical care is provided through an ERISA plan." *Dukes,* 57 F.3d at 358. *Dukes* explains that ERISA is principally concerned with the various mechanisms and institutions involved in the funding and payment of plan benefits and was intended to provide each participant with a remedy in the event that promises made by the plan were not kept. *Id.* at 357. *Dukes* distinguishes between claims that the "quantum" of benefits promised were not provided, which *is* controlled by ERISA, and the "quality" of the benefits actually received, which is *not* controlled by ERISA. *Id. Dukes* concluded that "[q]uality control of benefits, such as the health care benefits provided here, is a field traditionally occupied by state regulation and we interpret the silence of

Congress as reflecting an intent that it remain such." *Id.* I would adopt the rationale of the *Smith* and *Dukes* decisions and find that the negligence action against U.S. Healthcare is not preempted.

Therefore, I believe the overall purpose for the enactment of ERISA, as well as subsequent case law, would indicate that the negligence claim against U.S. Healthcare does not fall under the aegis of the preemption clause. It is for these reasons that I find state negligence laws have "only a tenuous, remote, or peripheral connection with [ERISA] covered plans...." *New York State Conference of Blue Cross & Blue Shield Plans, et al. v. Travelers Insurance Company et al.,* 514 U.S. 645, 661, 115 S.Ct. 1671, 1679, 131 L.Ed.2d 695, 708–709 (1995)(citing *District of Columbia v. Greater Washington Board of Trade,* 506 U.S. 125, 129 n. 1, 113 S.Ct. 580, 583, n. 1, 121 L.Ed.2d 513 (1992)).