Linda PRYZBOWSKI, Plaintiff,

v.

U.S. HEALTHCARE, INC., Medemerge, P.A., et al., Defendants.

No. Civ.A. 97–3097(MTB).

United States District Court, D. New Jersey.

Sept. 8, 1999.

Jerrold D. Goldstein, North Plainfield, New Jersey, for plaintiff.

Edward S. Wardell, Nancy C. Fletcher, Kelley, Wardell & Craig, Haddonfield, New Jersey, for defendant U.S. Healthcare, Inc.

Joseph R. Lang, Lenox, Socey, Wilgus, Formidoni & Casey, Lawrenceville, New Jersey, for defendants Medemerge, P.A., John Pilla, M.D., Kent Ellis, M.D. and Carol Sgamburelli, M.D.

**OPINION**

BARRY, District Judge.

This matter comes before the court upon the motion for summary judgment of defendants Medemerge, P.A. ("Medemerge") and John Pilla, M.D. ("Dr.Pilla"), Kent Ellis, M.D. ("Dr.Ellis"), and Carol Sgambelluri, M.D. ("Dr.Sgambelluri")[1] (collectively as "the doctor defendants").[2] This court having reviewed the submissions of the parties without oral argument pursuant to Fed.R.Civ.P. 78, and for the reasons discussed below, defendants' motion for summary judgment will be granted.

**I. _Statement of the Case_**

On November 10, 1993, plaintiff sought treatment at Medemerge, her primary care center, after experiencing increasing back pain for several days. _See_ Lang Cert.,[3] Exh. A–1. A CT Scan of plaintiff's lower back was performed on November 29, 1993, revealing: a neurostimulator, implanted during a previous surgery; disc degeneration; and a "large extra-dural defect ... compressing the thecal sac" consistent with disc herniation. _See_ Exh. B.

Plaintiff was evaluated on December 3, 1993 by Dr. Alan J. Sarokhan ("Dr.Sarokhan") based on a referral from Dr. Ellis of Medemerge. _See_ Exh. C. Dr. Sarokhan noted in his report that plaintiff's was "an extremely complicated case" that "really falls outside of my range of expertise and probably out of the range of expertise of most of the surgeons in this area." _Id._ at 2. He observed that plaintiff has "had five prior back surgeries, [and] has a lot of scarring in an implanted nerve stimulator." _Id._ Furthermore, Dr. Sarokhan noted that plaintiff "certainly needs a neurosurgical evaluation and needs one promptly" and stated that Dr. Pilla, also of Medemerge, with whom he had been in contact, "was kind enough to arrange it." _Id._

Plaintiff was subsequently evaluated on December 9, 1993, upon referral, by neurosurgeon Dr. Aiden J. Doyle ("Dr.Doyle"). _See id._, Exh. D. Dr. Doyle's report, which noted plaintiff's "multiple lumbar disc surgeries" and the insertion of an "epidural

---

1. As neither the complaint, nor plaintiff's brief in opposition to this motion, makes any mention of Dr. Sgambelluri, Count Ten, the only count in which she is named, will be dismissed as to her.

2. On December 3, 1997, Counts One through Five, as well as Count Seven, were dismissed by this court on a motion for summary judgment by U.S. Healthcare, Inc. ("U.S.Healthcare"). _See_ Order, December 3, 1997. U.S. Healthcare is, therefore, no longer a party to this case. Furthermore, plaintiff Linda Pryz-

bowski ("Pryzbowski") does not oppose defendants' motion as to Counts Nine and Eleven. _See_ Pl.Opp.Br. at 15. Thus, the only remaining counts before this court on this motion for summary judgment are Counts Six and Eight, against Medemerge, and Count Ten, against Doctors Pilla and Ellis.

3. All of the documents—or "Exhibits"—referred to and, indeed, the only ones provided to this court, are annexed to the Lang Certification.

transducer" in her back, concluded that "in view of [the fact that] this electrode array overlays the area of the surgery, she should go back to the surgeon who put [the epidural transducer or neurotransmitter] in. I have discussed this with them and obviously I really don't feel that I should be fiddling with that." *Id.* The surgeon who implanted the device in question was Dr. Giancarlo Barolat ("Dr.Barolat") of Thomas Jefferson University Hospital ("TJUH"). *See* Exh. E.

Because Dr. Barolat was an "out of network" physician,[4] on December 15, 1993, Medemerge sought—and received—approval from U.S. Healthcare for the referral. *See* Exh. A–2. On January 19, 1994, Dr. Barolat evaluated plaintiff and concluded that she was in "excruciating pain" and had a "definite lesion ... that has to be removed." Exh. E. He stated that:

the following things would be required for us to take care of this lady:

1. Surgical intervention by me with a re-do laminectomy and removal of large disc herniation.

2. Spinal instrumentation and fusion by a separate orthopaedic surgeon.

3. Pulmonary clearance by Dr. Cohen who is our pulmonary specialist who would also be following her during the hospital stay in case of problems.

4. Consultation with the Pain Service for pre and postop pain management.

5. Possible psychological assessment and follow-up during the hospital stay to cope with her emotional status.

Exh. E at 2. Dr. Barolat elaborated on the complexities of the potential surgery, the "very large doses of narcotics" plaintiff was taking, and stated, in conclusion:

If we go ahead with the surgical intervention I would certainly want to see her again prior to the surgery in order to discuss more thoroughly the surgical procedure and the risks. I would probably also want to try to reduce her medications to a minimum prior to the surgery in order to avoid habituation and avoid the fact that she might require incredibly large doses of narcotics in order to give her any kind of pain relief.

*Id.* Medemerge claims that it received Dr. Barolat's report on February 10, 1994. *See* Def.Br.Supp. at 2.

■ On March 19, 1994, Medemerge sent another request to U.S. Healthcare seeking approval for Dr. Barolat to perform plaintiff's back surgery.[5] *See* Exh. A–3. Subsequently Anita McGinley ("McGinley"), an employee of Medemerge,[6]

---

4. An out-of-network (or non-par) physician is one who is not a participant in the patient's HMO plan. When plaintiff was a patient of Dr. Barolat, she was under the health plan of a different HMO. *See* Pl. Ctr–Stmt. ¶ 2.

5. The form sent on March 19, 1994 does not discuss the procedures noted by Dr. Barolat but, rather, states "See attached letter." (Exh. A–3). No letter was provided·to the court. The court assumes that the referenced letter was a request to allow Dr. Barolat to perform plaintiff's back surgery based on the date of the form, March 10, 1994, and because, in the section labeled "**REASON FOR NON–PAR PHYSICIAN OR FACILITY**", were the words:

[Patient] has electrode implant at disc herniation—initial surgery done by Dr. Barolat—no other special will touch [patient] to re-do surgical procedure.

Exh. A–3.

6. In her counter-statement of facts, plaintiff asserts that McGinley was hired as a clerk but had "no prior experience", that McGinley testified that she had no prior experience, and that McGinley did not receive any training for her position at Medemerge. Pl. Ctr–Stmt. ¶¶ 3, 4. Plaintiff fails to offer, however, any evidentiary support, such as McGinley's deposition transcript, or even a page reference to that transcript, for those assertions. Indeed, plaintiff has not provided this court with any evidence whatsoever in opposing this motion but merely has referenced defendants' exhibits from time to time. This court, although construing the facts in a light most favorable to plaintiff, is unable to consider unsupported conclusory allegations. *See* Fed.R.Civ.P. 56(e) ("an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided

faxed Ann Koenig, of U.S. Healthcare,[7] some documentation and wrote the following on the fax cover sheet:

> 3/14/94 —Per Ann Koenig—Linda must be seen by par pulmonologist, mental health and & pain management teams thru *us* [Mede-merge] before surgery. 1) Dr. Levin—Pain Management 2) Community Mental Health 3) Pulm. Dr. Sarraf.

Exh. A–4 (emphasis in original).

Defendants allege that "over the next few months, approval was sought from U.S. Healthcare for coverage for the sur-

in this rule, must set forth specific facts showing that there is a genuine issue for trial").

7. Exh. H., 11/23/98 Peeno Ltr. at 2.

8. Documentary evidence that Medemerge did in fact make further efforts to seek approval, in addition to the written request it made in March, *see* Exh. A, has not been provided to the court.

Furthermore, a letter of plaintiff's expert, Linda Peeno, M.D. ("Dr.Peeno"), states that plaintiff testified at her deposition that she made "weekly" calls to McGinley regarding the status of her case and was told that Medemerge was awaiting U.S. Healthcare's response, but that "nothing was happening." Exh. H, 04/16/98 Peeno Ltr. at 4. She states, as well, that plaintiff was told by "doctors at Medemerge" that the delay was due to her "insurance" and was told by Dr. Ellis that their "hands are tied." *Id.* Oddly, however, this court has not been provided with a copy of plaintiff's deposition or an affidavit from plaintiff to substantiate these statements. Unfortunately for plaintiff, this court is unable to accept Dr. Peeno's characterization of testimony as raising an issue of fact for purposes of this motion.

9. In support of this allegation, defendants have provided the following evaluative reports of plaintiff: a report of Edward Barrett, Ph.D., of UMDNJ Community Mental Health Center, dated February 19, 1994; a report of Dr. Alexander Levin of the Pain Control Center, dated April 6, 1994; and a report of Dr. M.A. Sarraf, a pulmonologist, dated April 18, 1994. *See* Exh. F.

10. Included in Exhibit A are the following:
—a fax cover sheet to Stephanie from Anita "Re: Linda Przybowski [sic] !!!!!!" (A–5); —a photocopy of a lined piece of paper with handwritten notes "Psychologist Dr.

gery recommended by Dr. Barolat."[8] Def.Br.Supp. at 2. Defendants further allege that plaintiff had the consultations requested by Dr. Barolat.[9] *See id.* Apparently, however, Dr. Barolat insisted that those consultations be with TJUH physicians—who themselves were not participating in the Medemerge plan—before he would perform the surgery.[10] *See* Def. Br.Supp. at 2.

Defendants claim, and plaintiff does not dispute, that eventually U.S. Healthcare agreed to allow plaintiff to consult with TJUH physicians, and she did so. Approval from U.S. Healthcare for the surgery was received on June 30, 1994 [11]

Margolis 592–8165 Pain Control Dr. Evan Frank 955–7246 (PAIN)" and a stick-it note reading: "5/3/94 Stephanie—Dr. Barolat's office. Dr. will *not* perform surgery unless specials at Jefferson in consult—USHC will not approve" and appears to be initialed by Anita (A–6) (emphasis in original); and, —a fax cover sheet, date unknown, from Anita to "Sandra Forbes—USHC" stating "Dr. Barolat, the non-par neurosurgeon, did not want to accept these consults after they were done. Also, found out that Dr. Cohn's office spoke to a John McCants at USHC at 1–800–624–0756 who 'authorized' a visit?!?" (A–7).

These undated and obscure notes and cover sheets are, to put it mildly, not helpful to the court's resolution of defendants' motion.

11. Plaintiff contends that "Ms. McGinley's testimony was in direct conflict with the testimony of the two representatives of U.S. Healthcare [Ms. Forbes and Ms. Ryan] ... in that the records of the HMO showed that there was no request by the Defendants for approval for out of network surgery until June 30, 1994, which approval was given by the medical director of the HMO on the very same day." Pl. Ctr–Stmt. ¶ 7. Yet again, plaintiff offers nothing in the way of evidence in support of this contention. And, yet again, plaintiff neither cites to the said depositions, nor provides them to the court. Similarly, she has failed to provide *any* records of either U.S. Healthcare or Medemerge that pertain to her case. While Dr. Peeno summarized and characterized the deposition testimony of Ms. Forbes and Ms. Ryan, *see* Exh. H, 11/23/98 Ltr. at 1–2, without having the deposition transcripts of Ms. Forbes, Ms. Ryan, or of plaintiff herself, it is, obviously, impossible for the court to determine whether or not any conflicts in testimony, in fact, exist regarding

(Exh. H., 11/23/98 Peeno Ltr. at 2); Dr. Barolat performed the surgery on July 7, 1994. *See* Exh. G.

Plaintiff claims that, due to the delay in receiving the necessary approval for her back surgery, she has suffered various injuries. *See* Exh. J., Am.Compl. Furthermore, she alleges that it was the negligence of Medemerge and the doctor defendants that caused this delay. *See id.,* Counts Six,[12] Eight and Ten. Defendants [13] now move for summary judgment on those counts.

## II. *Discussion*

Summary judgment may be granted when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When ruling on a motion for summary judgment all facts and reasonable inferences drawn from the evidence are viewed in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The moving party has the initial burden of pointing out the absence of a genuine issue as to any material fact, but summary judgment is only granted against a party who fails

to demonstrate "the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Defendants essentially offer two arguments in support of their motion: one, that plaintiff's claims are preempted by ERISA § 514(a), 29 U.S.C. § 1144(a) (hereinafter " § 514(a)"); and, two, that plaintiff fails to state a claim for negligence upon which relief can be granted. This court will address both arguments in turn.[14]

 Defendants argue that although plaintiff's claims against them are not *completely* preempted [15] by ERISA, those claims are, nonetheless, preempted because they "relate to" an ERISA plan. *See* § 514(a).[16] "Relate to" preemption has traditionally been interpreted broadly in keeping with Congress's intent to regulate employee benefit plans. *See Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 45– 46, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). Thus, in the past, a state law that had "a connection with or reference to" an ERISA plan was subject to ERISA preemption. *Shaw v. Delta Air Lines,* 463 U.S. 85, 96–97, 103 S.Ct. 2890, 77 L.Ed.2d

a request for approval. What the court does have, however, is a request to authorize surgery by Dr. Barolat sent to U.S. Healthcare by Medemerge on March 10, 1994. For purposes of this motion, therefore, that is the only fact this court may consider.

12. Count Six alleges that Medemerge was negligent in its hiring, training and supervision of its employees. *See* Exh. J, ¶¶ 2, 3.

13. For clarity, this court will refer to Medemerge, Pilla and Ellis as "defendants" for the remainder of its discussion.

14. The following analysis pertains to Counts Eight and Ten, the disposition of Count Six being dependent upon the finding of negligence on the part of Medemerge employees.

15. It is, by now, clear that there is a marked difference between complete preemption, pursuant to § 502(a), and preemption pursuant to § 514(a). A district court has removal jurisdiction over claims that fall within the

former provision for, even though a federal claim is not apparent on the face of the complaint, when a claim is completely preempted an exception to the well-pleaded complaint rule exists, and the case may be removed. Under the latter provision, however, a defendant may raise a defense of preemption, arguing that the claims "relate to" an ERISA plan, but because a federal defense is not sufficient to establish subject matter jurisdiction under the well-pleaded complaint rule, those claims will not provide the basis for removal jurisdiction. *See Dukes v. U.S. Healthcare,* 57 F.3d 350, 355 (3d Cir.1995).

16. Specifically, ERISA § 514(a) provides:

Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.

490 (1983). Indeed, even if the law had an indirect effect on an ERISA plan, it was deemed preempted. *See Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 139, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990).

■ Concerned, however, that the breadth of the preemption test was seemingly without limit, the Supreme Court narrowed the scope of "relate to" preemption. *See De Buono v. NYSA–ILA Med. and Clinical Serv. Fund,* 520 U.S. 806, 813–14, 117 S.Ct. 1747, 138 L.Ed.2d 21 (1997); *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 655, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995) ("If 'relate to' were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes pre-emption would never run its course, for '[r]eally, universally, relations stop nowhere' ") (citation omitted). Now, instead of simply looking for a remote connection to an ERISA plan, courts must "go beyond the unhelpful text and the frustrating difficulty of defining its key term ... and look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive." *Bast v. Prudential Ins. Co. of America,* 150 F.3d 1003, 1007 (9th Cir.1998) (quoting *Travelers,* 514 U.S. at 656, 115 S.Ct. 1671).

Here, plaintiff claims that defendants' negligence—a violation of state law—in failing to obtain prompt approval for her out-of-network surgery caused her injury.[17] Defendants argue that, although dressed in state law clothing, plaintiff's negligence claims "relate to" an ERISA plan, as it was the plan that required that the outside specialist be approved—the requirement that caused the delay.[18] *See* Def.Br.Supp. at 11–13. Plaintiff insists, however, that her claims take issue with the quality of care—and not the benefits—she received, and, thus, are not preempted by ERISA.

■ To resolve the preemption question, i.e. whether plaintiff's claims relate to an ERISA plan, this court must determine whether she is in fact challenging the administration of her benefits or the quality of care she received. It is axiomatic that if a participant in a plan subject to ERISA is suing an HMO based upon the improper processing of a claim under that plan, the claim is completely preempted by federal law. *See Pilot Life,* 481 U.S. at 52–54, 107 S.Ct. 1549; ERISA § 502(a). It follows, therefore, that a claim for negligent delay in the utilization review, or pre-authorization process, even if alleged as a state law violation against the physician, would, at the very least, "relate to" an ERISA plan and, thus, be preempted. If a participant is challenging the quality of care he or she received from the physician, however, that claim is not preempted. *See Coyne & Delany Co. v. Selman,* 98 F.3d 1457, 1470 (4th Cir.1996) (finding that professional malpractice claim was not preempted by ERISA); *Moreno v. Health Partners Health Plan,* 4 F.Supp.2d 888, 892 (D.Ariz. 1998) ("Plaintiff's malpractice claim goes to the *quality* of care received. If we were in the Third Circuit, the case would be remanded to the state courts[.]") (emphasis in original) (citing *Dukes* ); *Edelen v. Osterman,* 943 F.Supp. 75, 76–77 (D.D.C.1996) (noting distinction between a claim contesting administration or determination of benefits as opposed to the quality of medical care received).

In cases in which HMOs have been sued, therefore, courts have looked to whether the plaintiff was seeking to hold the HMO vicariously liable for the *medical malprac-*

---

**17.** In the Final Pretrial Order ("FPO"), plaintiff articulated her "legal issue," in part, as follows:

> The central issue to be presented by the Plaintiff is the existence of the duty of advocacy of the treating physician to affirmatively intervene on behalf of his patients for needed treatment, which has been unfairly

> or improperly denied or otherwise delayed by USHC, and whether that duty has been breached by these Defendants [.]

FPO at 17.

**18.** It is undisputed that plaintiff is, and was at the time, a beneficiary/participant in an ERISA plan.

*tice* of its physicians, a claim often deemed *not* preempted, *see Dukes*, 57 F.3d at 360–61; *Pacificare of Oklahoma, Inc. v. Burrage*, 59 F.3d 151, 155 (10th Cir.1995); *Smith v. HMO Great Lakes*, 852 F.Supp. 669, 672 (N.D.Ill.1994); *see also Elsesser v. Hospital of Philadelphia College of Osteopathic Medicine, Parkview Div.*, 802 F.Supp. 1286, 1290–91 (E.D.Pa.1992); *but see Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482, 1493–95 (7th Cir.1996) (holding that vicarious liability for doctor's negligence was preempted by § 514(a)); or if the plaintiff was attempting to hold the HMO responsible for its own negligence in the refusal to authorize or delay in authorizing services leading to injury— claims several courts have deemed preempted by ERISA. *See Bast*, 150 F.3d at 1007–08; *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941–42 (6th Cir.1995); *Kuhl v. Lincoln National Health Plan of Kansas City, Inc.*, 999 F.2d 298, 302–03 (8th Cir.1993) (ERISA preempted wrongful death claim based upon delayed preauthorization for surgery), *cert. denied*, 510 U.S. 1045, 114 S.Ct. 694, 126 L.Ed.2d 661 (1994); *Spain v. Aetna Life Ins. Co.*, 11 F.3d 129, 131–32 (9th Cir.1993), *cert. denied*, 511 U.S. 1052, 114 S.Ct. 1612, 128 L.Ed.2d 340 (1994) (ERISA preempted wrongful death claim based on withdrawal of authorization for surgery); *Corcoran v. United HealthCare, Inc.*, 965 F.2d 1321, 1331–32 (5th Cir.), *cert. denied*, 506 U.S. 1033, 113 S.Ct. 812, 121 L.Ed.2d 684 (1992); *Andrews–Clarke v. Travelers Ins. Co.*, 984 F.Supp. 49, 58 (D.Mass.1997); *Bailey–Gates v. Aetna Life Ins. Co.*, 890 F.Supp. 73, 77 (D.Conn.1994) ("Since plaintiff's claim arises because of the existence of the benefit plan, common sense dictates that it also 'relates to' that plan."); *Elsesser*, 802 F.Supp. at 1290–91 (holding that claim for negligent authorization "clearly has a connection with or relates to" an ERISA plan); *but see Pappas v. Asbel*, 555 Pa. 342, 724 A.2d 889, 893 (1998) (holding that negligence claims against HMO did not "relate to" an ERISA plan), *pet. for cert. filed*, 67 USLW 3717 (May 13, 1999); *Prudential Ins. Co. of America v. Doe*, 46 F.Supp.2d 925, 936 (E.D.Mo.1999) (holding that plaintiff's claims for a variety of state torts including intentional or negligent infliction of emotional distress against HMO did not "relate to" an ERISA plan and, thus, were not preempted).

Deeming state law claims against HMOs preempted had the unfortunate effect—an effect that was not lost on the courts deciding those cases—of leaving plaintiffs without a remedy.[19] *See Bast*, 150 F.3d at 1010 ("Although forcing [plaintiffs] to assert their claims only under ERISA may leave them without a viable remedy, this is an unfortunate consequence of the compromise Congress made in drafting ERISA."); *Tolton*, 48 F.3d at 943 ("One consequence of ERISA preemption, therefore, is that plan beneficiaries or participants bringing certain types of state actions-such as wrongful death-may be left without a meaningful remedy."); *Corcoran*, 965 F.2d at 1333 ("While we are not unmindful of the fact that our interpretation of the pre-emption clause leaves a gap in remedies within a statute intended to protect participants in employee benefit plans ... the lack of an ERISA remedy does not affect a pre-emption analysis."); *Thompson v. GenCare Health Systems, Inc.*, 49 F.Supp.2d 1145, 1147 (E.D.Mo.1999) ("This Court joins the number of courts which have lamented the questionable public policy resulting in a lack of remedy in such cases ... As others have noted, action by Congress is necessary to avoid this unfortunate and repeated legal result in cases even of tragic circumstances."); *Andrews–Clarke*, 984 F.Supp. at 53 ("Enacted to safeguard the interests of employees and their beneficiaries, ERISA has evolved into a shield of immunity that protects health insurers, utilization review providers, and other managed care entities from

---

**19.** Indeed, this court was required to dismiss the case against U.S. Healthcare, plaintiff's HMO, because there was no cause of action under ERISA for the relief plaintiff sought. *See* Order at 4–5 n. 5.

potential liability for the consequences of their wrongful denial of health benefits.").

Rarely, however, are claims brought against a physician—as opposed to an HMO—for negligent delay in the authorization of services, presumably because it is not usually the fault of the physician that the HMO has not moved more swiftly in authorizing the requested treatment. In this case, however, plaintiff claims that the failure of her physicians—and of Mede-merge—to advocate on her behalf for an expedited review of her request was, at least in part, responsible for her injuries. The question for this court, then, is whether such claims "relate to" an ERISA plan such that, in furtherance of Congressional policy, they should be preempted.

It is clear that plaintiff's claims, at their core, challenge the poor administration of her plan—the failure to promptly approve the request for Dr. Barolat to perform the surgery—rather than the quality of care she received. *See Andrews–Clarke,* 984 F.Supp. at 58 ("Unlike the hospital surcharge statute at issue in *Travelers,* which had only an indirect economic influence on plan administration, here [plaintiff's] claims [for improper refusal of treatment leading to insured's death] go right to the heart of the benefit determination process.") (citation omitted); *see also Turner v. Fallon Community Health Plan, Inc.,* 127 F.3d 196, 199 (1st Cir.1997) ("It would be difficult to think of a state law that 'relates' more closely to an employee benefit plan than one that affords remedies for the breach of obligations under that plan."), *cert. denied,* —— U.S. ——, 118 S.Ct. 1512, 140 L.Ed.2d 666 (1998); *Pacificare,* 59 F.3d at 154 (noting that in the Tenth Circuit, "laws and common-law rules that provide remedies for misconduct growing out of the administration of the ERISA plan" relate to an ERISA plan and are preempted) (citation omitted). As one court put it,

> Despite plaintiff's attempts to craft defendants' actions as medical malpractice, the wrong committed in this case relates to the administration of the plan, not to the provision or supervision of medical services. In fact, the overarching problem was that no medical treatment was ever initiated let alone provided. Plaintiff was seeking a referral *pursuant to the plan* in order to utilize benefits *under the plan* and the failed administration *of the plan* precluded her from doing so. The Court recognizes plaintiff is attacking the quality of services provided by the defendants rather than the denial of acknowledged benefits; however, the service complained of is administrative not medical.

*Huss v. Green Spring Health Services,* 18 F.Supp.2d 400, 405 (D.Del.1998).

 That plaintiff couches her claims in terms of a physician's "duty to advocate" on behalf of his patient does not transform her claims into claims for medical malpractice, which she does not allege, or common law negligence. *See* FPO at 17. Thus, plaintiff's claims are preempted. Furthermore, as "ERISA's civil enforcement provision . . . does not authorize recovery for wrongful death, personal injury, or other consequential damages caused by an improper refusal of an insurer or utilization review provider to authorize treatment[,]" *Andrews–Clarke,* 984 F.Supp. at 59, let alone a cause of action against the *physician,* plaintiff's claims must be dismissed.

 Parenthetically, even assuming that this court is wrong and plaintiff's claims survive ERISA preemption, the state law claims of negligence must still be dismissed. It is hornbook law that to allege a cause of action in negligence a plaintiff must show: "(1) a duty of care owed by defendant to plaintiff; (2) a breach of that duty by defendant; and (3) an injury to plaintiff proximately caused by defendant's breach." *Endre v. Arnold,* 300 N.J.Super. 136, 142, 692 A.2d 97 (App.Div.1997) (citing *Anderson v. Sammy Redd and Assoc.,* 278 N.J.Super. 50, 56, 650 A.2d 376 (App.Div. 1994), *certif. denied,* 139 N.J. 441, 655 A.2d 444 (1995)). "Whether a duty exists is solely a question of law to be decided by a

court and not by submission to a jury." *Endre*, 300 N.J.Super. at 142, 692 A.2d 97.

 Plaintiff has failed to show that defendants owed plaintiff a "duty to advocate" so as to expedite the approval of her surgery. All she has offered in support of the alleged duty are the Hippocratic Oath and the Code of Medical Ethics (Exh. H. Peeno Ltr. 4/16/98 at 7; Exh. N), neither of which has the force of law. *Cf. Baxt v. Liloia*, 155 N.J. 190, 202–04, 714 A.2d 271 (1998) (holding, in a case against an attorney, that violation of rules of professional conduct cannot be used to provide basis for civil liability against adversary's attorney); *see also Pierce v. Ortho Pharmaceutical Corp.*, 84 N.J. 58, 76, 417 A.2d 505 (1980) (stating in wrongful discharge claim that "the Hippocratic oath does not contain a clear mandate of public policy" to satisfy the standard).

 With respect to the second element, if there is no duty, *a fortiori* there can be no breach of duty. Even if there was a "duty to advocate", however, plaintiff has failed to produce evidence, other than conclusory allegations, that defendants breached that duty. The only evidence before this court shows that: one, Medemerge submitted a form to U.S. Healthcare regarding the approval of Dr. Barolat, (*see* Exh. A–3); and, two, Medemerge arranged for the consultations that *Dr. Barolat* requested be done prior to surgery. *See* Exh. F. Importantly, it was Dr. Barolat—who is not a defendant in this action—who rejected those initial consultations and insisted that *his* colleagues do the consults prior to surgery, which caused further delay. *See* Exh. A–6. Any evidence that defendants were negligent in failing to advocate, or promptly advocate, authorization for the surgery has simply not been provided to the court; without it, plaintiff cannot sustain her burden on summary judgment.

 Finally, plaintiff has failed to provide evidence regarding the injuries the delay allegedly caused. Save for Dr. Barolat's conclusion that "[t]he surgery was not very successful in relieving the excruciating pain" (Exh. M) and Dr. Peeno's statement that the delay caused "prolonged and unnecessary pain, suffering, reliance upon pain medications, and psychological distress" (Exh. H, Peeno Ltr. 4/16/98 at 8), there is scant evidence of injury, with not so much as a diagnostic medical report or an affidavit from plaintiff herself having been provided.

Thus, regardless of whether plaintiff's claims are preempted by ERISA, plaintiff has failed to show a genuine issue of material fact which would require this court to deny defendants' motion for summary judgment as to Counts Six,[20] Eight and Ten. Defendants' motion for summary judgment is, therefore, granted.

### III. *Conclusion*

For the foregoing reasons, the court will grant defendants' motion for summary judgment as to Counts Six, Eight and Ten.

20. As plaintiff has failed to raise an issue of fact regarding defendants' alleged negligence, the claim against Medemerge for negligent hiring, training and supervision of its employees must fail as well.