**Brewer v. Geisinger Clinic Inc.**

C.P. of Lackawanna County, no. 98 Civil 733.

*Jill Miller,* for plaintiffs.
*Kenwyn M. Dougherty, John Durkin, Thomas Foley Jr.* and *Mark Perry,* for defendants.

COTTONE, *S.J.*, March 31, 2000—This court is called upon to address a number of issues raised by various defendants via preliminary objections. The defendant, Geisinger Health Plan, has raised several objections to the complaint. First, it asserts that the plaintiffs' cause of action against it relates to an employee benefit plan and is, therefore, preempted under section 514(a) of ERISA, 29 U.S.C. §1144(a). This defendant also alleges that the plaintiff-husband cannot raise a claim for lack of informed consent; that the plaintiffs' claim for punitive damages and allegations of gross, reckless and wanton conduct should be stricken; and that the claims for corporate negligence against a medical group or practice is not recognized in Pennsylvania.

The preliminary objections filed by the defendants, Geisinger Clinic,[1] Penn State Geisinger Health Systems Inc., Jay Redan M.D., Clarence Mast M.D.[2] and Gehred Wetzel D.O., allege that the theory of corporate negligence as it relates to them is not recognized as a valid claim in Pennsylvania; that the plaintiffs failed to state a cause of action for punitive damages; lack of specificity; and questioned whether a claim for informed consent may be raised by plaintiff-husband.

The plaintiffs aver that plaintiff-wife, Theresa Brewer, was referred by Dr. Mast, her treating physician, to Dr. Wetzel. The complaint alleges that Mrs. Brewer had been treated by Dr. Mast for approximately three years for problems with her menstrual cycle. Dr. Wetzel recom-

1. Incorrectly referred to and designated in the caption as Geisinger Clinic Inc. d/b/a Geisinger Medical Group.

2. Dr. Mast has since been dismissed from this case with prejudice by stipulation and order of court dated May 6, 1999.

mended that Mrs. Brewer have a total abdominal hysterectomy with removal of both fallopian tubes and ovaries. This surgery was ultimately performed by Drs. Wetzel and Mast at Tyler Memorial Hospital in May of 1997.

Shortly after her surgery, the plaintiff-wife began to experience elevated temperatures, alternating diarrhea and constipation, weakness, nausea and abdominal pain. She was readmitted to the hospital a few days later when it was discovered that she had a leak consistent with colon rectal perforation, a large abscess and partial dehiscence (splitting open) of the cervical and vagina cuff. Dr. Redan performed a colostomy and an appendectomy to treat these problems.

The plaintiffs instituted suit alleging, inter alia, that the defendants were negligent in administering and providing health care treatment for plaintiff-wife. The claim against the clinic is based upon corporate negligence.

This court must first determine whether, under the facts alleged, the Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001 et seq., is applicable and, thus, preempts the state tort claims against the plan. This court notes that it is undisputed that Mrs. Brewer's medical insurance was provided to her by her employer.

ERISA is a federal statute designed to uniformly regulate employee benefit plans. In order to implement a uniform application of said plans, Congress included section 514(a), 29 U.S.C. §1144(a), which preempts a state law when that law "relates to any employee benefits plan." An employee benefit plan is defined as an employee welfare benefit plan. 29 U.S.C. §1002(3). Section 1002(1) further identifies what an employee welfare benefit plan is. It is any plan, fund or program estab-

lished or maintained by an employer or by an employee organization that is maintained for the purpose of providing its participants or their beneficiaries medical, surgical, or hospital care benefits in the event of sickness, accident, disability, death or unemployment. 29 U.S.C. §1002(1).

To date, the United States Supreme Court has not directly addressed the issue of whether negligence claims against a health maintenance organization relate to an ERISA plan.[3] The Pennsylvania Supreme Court, however, has addressed this issue in *Pappas v. Asbel,* 555 Pa. 342, 724 A.2d 889 (1998).

The *Pappas* court, after reviewing the line of cases involving ERISA preemption claims, noted that the preemption provision of ERISA, 29 U.S.C. §1144(a), was formerly given a "broad sense of meaning." The court commented that these earlier cases generally concluded that the state laws being reviewed had some "connection with" or "reference to" ERISA and were, therefore, preempted.

The *Pappas* court observed that in 1995 in *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Insurance Co.,* 514 U.S. 645, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995), the U.S. Supreme Court admitted that after several years of attempting to interpret the preemption language of ERISA, the text was "unhelpful." 555 Pa. at 348, 724 A.2d at 892. The *Pappas* court

---

3. There is an ERISA/HMO negligence case currently pending before the Supreme Court.

concluded that although the U.S. Supreme Court decisions from the 1980s and 1990s hold that "the preemption provision is to be read broadly, *Travelers* and its [line of cases] have thrown the expansive holdings of those earlier cases into question." 555 Pa. at 350, 724 A.2d at 893. (footnote omitted) The court concluded that, based on *Travelers* and its progeny, negligence claims against HMOs are not related to an ERISA plan. It observed that "[a]s noted by *Travelers,* Congress did not intend to preempt state laws which govern the provision of safe medical care. . . . Furthermore, we believe that negligence laws have 'only a tenuous, remote, or peripheral connection with [ERISA] covered plans, as in the cases with many laws of general applicability,'. . . and therefore are not preempted." 555 Pa. at 351, 724 A.2d at 893-94 (citing *Travelers, supra* at 661, 115 S.Ct. at 1680, 131 L.Ed.2d at 708-709).

This court does not believe that the plaintiffs' averments relative to financial or other disincentives, the requirement and/or encouragement of participating physicians to attend to an inordinate number of patients brings the instant action within the purview of ERISA. Their complaint clearly pertains to the quality of care provided to plaintiff-wife and the negligent rendering of said care and not to the administration of an employee benefit plan. As such, this court does not believe that ERISA preempts their claim. The defendant plan's preliminary objection based upon this issue is accordingly denied.

Next, all defendants object to the inclusion of a claim for punitive damages.

"Punitive damages may be awarded for conduct that is outrageous because of the defendant's evil motive or

his reckless indifference to the rights of others. In assessing punitive damages, the trier of fact can properly consider the character of the defendant's act, the nature and extent of the harm to the plaintiff that the defendant caused or intended to cause and the wealth of the defendant." Restatement (Second) of Torts §908(2).

The Restatement's definition of punitive damages has been adopted in Pennsylvania in *Feld v. Merriam,* 506 Pa. 383, 485 A.2d 742 (1984).

In order for punitive damages to be imposed, the nature of the tort-feasor's act, together with his motive, the relationship between the parties along with any other related facts should be considered. *Martin v. Johns-Manville Corp.,* 508 Pa. 154, 494 A.2d 1088 (1985). Imposition of punitive damages is appropriate only where the conduct complained of is especially egregious and is not to be awarded where the misconduct constitutes ordinary negligence such as inadvertence, mistake and errors of judgment. *Martin,* 508 Pa. at 170, 494 A.2d at 1096-97. Punitive damages are awarded only for outrageous conduct, that is, for acts done with a bad motive or with a reckless indifference to the interest of others. *Chambers v. Montgomery,* 411 Pa. 339, 192 A.2d 355 (1963).

This court believes that the plaintiffs have pled sufficient facts to bring their complaint within the ambit of punitive damages. The plaintiffs' averments contained in paragraphs 19 through 25 could be considered a reckless disregard of the plaintiff-wife's safety. The defendants' preliminary objections to dismiss the punitive damage count are, consequently, denied.

Several of the defendants object to the plaintiff-husband's, Mark Brewer's, informed consent claim. These objecting defendants assert that Mr. Brewer's claim based upon lack of informed consent is not derivative of his wife's action and is, thus, barred.

Our courts have defined consortium as a spouse's right to be secure in his or her relationship. *Hopkins v. Blanco,* 224 Pa. Super. 116, 302 A.2d 855 (1973). "For an injury to the wife, either intentionally or negligently caused, which deprives her of the ability to perform services, or lessens that ability, the husband may maintain an action for the loss of service[s] . . . ." *Kelley v. Mayberry Township,* 154 Pa. 440, 447, 26 A. 595, 597 (1893). It is an action derivative of the injured spouse's claim. *Manzitti v. Amsler,* 379 Pa. Super. 454, 457, 550 A.2d 537, 538 (1988).

In the matter sub judice, Mr. Brewer claims loss of consortium and avers in Count VIII that his loss arose due to lack of informed consent.

As a general rule, a physician must obtain informed consent from a patient prior to performing a surgical or operative procedure. *Sinclair v. Block,* 534 Pa. 563, 633 A.2d 1137 (1993). The rationale articulated by our courts for requiring informed consent for surgical or operative procedures is that such a procedure performed without a patient's consent constitutes a technical assault or battery because he or she is typically unconscious and unable to object. *Morgan v. MacPhail,* 550 Pa. 202, 704 A.2d 617 (1997).

The objecting defendants have cited no authority precluding a spouse's claim for loss of consortium based upon lack of informed consent to a surgical procedure.

*Morgan v. MacPhail, supra,* relied upon by these defendants in support of their position, is not controlling. In *Morgan,* our Supreme Court refused to extend the informed consent doctrine to nonsurgical and nonoperative procedures based upon lack of consent. In the instant action, there was a surgical procedure performed on plaintiff-wife to which the plaintiffs assert lack of informed consent.

Assuming arguendo that the plaintiffs prevail in this action and the jury concludes that the objecting defendants failed to provide them with sufficient knowledge and information upon which they could have made an informed consent, the jury should be allowed to determine whether Mr. Brewer has suffered a loss of consortium as a result of this failure. The preliminary objection requesting that Mr. Brewer's derivative claim based upon informed consent claim be stricken is denied.

All of the defendants have objected to the plaintiffs' corporate negligence claim. The plaintiffs aver that the clinic is a corporation which is a part of the Penn State Geisinger System Inc. They allege that this defendant regularly conducts business through its various health care facilities including approximately 30 community hospitals. The plaintiffs contend that the clinic is liable to them to uphold the proper standard of care to ensure Mrs. Brewer's safety and well-being while a patient of this system.

"Corporate negligence is a doctrine under which the hospital is liable if it fails to uphold the proper standard of care owed the patient, which is to ensure the patient's safety and well-being while at the hospital. This theory of liability creates a nondelegable duty which the hospital owes directly to a patient. Therefore, an injured party

does not have to rely on and establish the negligence of a third party." *Thompson v. Nason Hospital,* 527 Pa. 330, 339, 591 A.2d 703, 707 (1991).

Our courts have identified four areas of corporate liability: "(1) a [requirement] to use reasonable care in the maintenance of safe and adequate facilities and equipment . . .; (2) a [requirement] to select and retain only competent physicians . . .; (3) a [requirement] to oversee all persons who practice medicine within its walls as to patient care . . .; and (4) a duty to [develop], adopt and enforce adequate rules and policies to ensure quality care for the patients . . . ." *Thompson, supra* at 339-40, 591 A.2d at 707. (citations omitted)

Although our appellate courts have extended corporate liability to hospitals and HMOs, they have not, as yet, been confronted with whether it should be extended to clinics. Recently, in *Dibble v. Penn State Geisinger Clinic Inc.,* 42 D.&C.4th 225 (Lacka. Cty. 1999), the Honorable Carmen Minora of this court was confronted with the identical issue. After an examination of the appellate courts' rationale for applying corporate liability to hospitals and HMOs, Judge Minora concluded that despite a clinic's involvment in the delivery of health care to a patient, it "cannot be considered a comprehensive health care center such as a hospital, nor can it be construed to play a central role in the 'total health care of its subscribers.'" *Id.* at 233 (quoting *Shannon v. McNulty,* 718 A.2d 828, 835 (Pa. Super. 1998)). Judge Minora held that since a clinic is only a gateway for further referrals into the health care delivery system, that is, it is a primary care facility and is not a comprehensive medical care facility, he declined to extend the theory of corporate liability to clinics.

This court, although not required, adopts our honorable colleague's analysis of corporate liability as it relates to clinics. Consequently, the objecting defendants' demurrer to Count IX of the complaint is granted and Count IX is dismissed.

The clinic, Penn State, Dr. Redan and Dr. Wetzel also argue that various counts of the complaint contain vague and/or unspecific conclusory allegations of negligence directed towards them. They complain that the term "failing to interpret other medical data" without any further specific identification of what "other medical data" means is used throughout the pleading. They also contend that the complaint is insufficient because it fails to identify the rules, regulations or protocols the defendants failed to follow; that the complaint fails to identify who or in what way the personnel were unqualified; and that the plaintiffs failed to identify which tests were not performed due to financial incentives.

This court, after reviewing the complaint in its totality, finds that these averments are sufficiently specific to enable the defendants to defend. The lack of information complained of by these defendants can be addressed via discovery. This preliminary objection is, therefore, denied.

## ORDER

And now, March 31, 2000, it is hereby ordered and decreed that the defendants' preliminary objections concerning ERISA preemption, punitive damages, lack of informed consent by plaintiff-husband, lack of specificity are denied. It is further ordered and decreed that the defendants' preliminary objections concerning corporate negligence are granted.