

2001 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-27-2001

# Pryzbowski v. US Healthcare Inc.

Precedential or Non-Precedential:

Docket 99-5920

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

Recommended Citation

"Pryzbowski v. US Healthcare Inc." (2001). *2001 Decisions.* Paper 62.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/62

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed March 27, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 99-5920

LINDA PRYZBOWKSI,
        Appellant

v.

U.S. HEALTHCARE, INC.; MEDEMERGE, P.A.;
JOHN PILLA, M.D.; CAROL E. SGAMBELLURI, M.D.;
KENT R. ELLIS, M.D.; JANE AND JOHN DOES 1-5;
CORPORATIONS A-Z, such defendants being named
fictitiously to represent individuals and/or
business entities whose actions led to the
delayed performance of surgery upon
Linda Pryzbowski

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 97-cv-03097)
District Judge: Hon. Maryanne Trump Barry

Argued: November 14, 2000

Before: SLOVITER, AMBRO and WEIS, Cir cuit Judges

(Filed: March 27, 2001)

Jerrold D. Goldstein (Argued)
North Plainfield, NJ 07060

 Attorneys for Appellant

Edward S. Wardell (Argued)
Kelley, Wardell & Craig
Haddonfield, NJ 08033

 Attorney for U.S. Healthcare, Inc.

Melvin Greenberg (Argued)
Greenberg, Dauber Epstein &
 Tucker
Newark, NJ 07102

 Attorney for Medemerge, P.A.,
John Pilla, M.D., Carol E.
Sgambelluri, M.D., and Kent R.
Ellis, M.D.

Herbert J. Stern
Stern & Greenberg
Roseland, NJ 07068

 Attorney for Amicus Curiae-
Appellee The Medical Society of
New Jersey

OPINION OF THE COURT

SLOVITER, Circuit Judge.

Before us is Linda Pryzbowski's appeal of two orders of the United States District Court for the District of New Jersey: (1) the December 3, 1997 order dismissing her claims against U.S. Healthcare for its delay in approving requested services after determining that those claims were completely preempted under S 502(a) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. S 1132(a)(1)(B); and (2) the September 8, 1999 order granting summary judgment on the state law claims in favor of the remaining defendants, Medemerge, P.A. and Dr. John Pilla, Dr. Carol E. Sgambelluri, and Dr. Kent R. Ellis ("the physician defendants"), on the gr ound that those

claims were expressly preempted byS 514(a) of ERISA, 29 U.S.C. S 1144(a). See Pryzbowski v. U.S. Healthcare, Inc., 64 F. Supp. 2d 361 (D.N.J. 1999).

Our review of the District Court's orders granting dismissal and summary judgment based on ERISA preemption is plenary. See Travitz v. Northeast Dep't ILGWU Health & Welfare Fund, 13 F .3d 704, 708 (3d Cir. 1994). When reviewing the order granting dismissal, we must accept as true all the factual allegations in the complaint and draw all reasonable inferences fr om them. See Banks v. Wolk, 918 F.2d 418, 419 (3d Cir . 1990). When reviewing the order granting summary judgment, we must draw all reasonable inferences in favor of the non-moving party and may only affirm if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. See Travitz, 13 F .3d at 708.

I.

FACTS AND PROCEDURAL POSTURE

Pryzbowski is enrolled in The Health Maintenance Organization of New Jersey, Inc., a wholly owned subsidiary of U.S. Healthcare, Inc. (hereafter "U.S. Healthcare"), which is a health maintenance organization ("HMO") offered by the employer of Pryzbowski's husband under its employee benefit plan within the terms of ERISA. On November 10, 1993, Pryzbowski sought treatment from Medemerge, her primary care provider, for sever e back pains that she had been experiencing for several days. Medemerge is a physician practice group under contract with U.S. Healthcare to provide health care services. Pryzbowski had previously undergone numerous sur geries for her back, the most recent having been performed by Dr. Giancarlo Barolat of Thomas Jefferson University Hospital in Philadelphia, all of which were covered under her previous health care plan. At Medemerge, she was treated at different times by Dr. John Pilla, Dr. Carol E. Sgambelluri, and Dr. Kent R. Ellis.

A CT scan performed on November 29, 1993 revealed disc degeneration and a large, extra-dural defect

compressing the thecal sac, consistent with disc herniation. It also showed a previously implanted neur ostimulator. Medemerge referred Pryzbowski to Dr . Alan Sarokhan, an orthopedic surgeon. Dr. Sarokhan wrote to Dr. Ellis, stating that "[s]he certainly needs a neurosur gical evaluation and needs one promptly. . . . It is my opinion that she will most likely find that the most recent operating surgeon is the only one in the area who will be likely to even approach this with any confidence." App. J, at J-2. On December 9, 1993, Pryzbowski went to see Dr. Aiden Doyle, a neurosurgeon, again through a referral from Medemer ge. Dr. Doyle concluded, "she should go back to the sur geon who put it in. I have discussed this with them and obviously I really don't feel that I should be fiddling with that." App. K, at K-3.

Based on these two reports, Medemerge sent a request to U.S. Healthcare on December 15, 1993 for a consultation with Dr. Barolat, who was the neur osurgeon who last performed surgery on Pryzbowski. Dr. Barolat was not a participant in the particular plan offer ed by U.S. Healthcare. Pryzbowski's policy with U.S. Healthcare required that it give prior written authorization for services by non-participating providers and facilities. U.S. Healthcare approved the consultation and Dr. Barolat examined Pryzbowski on January 19, 1994. He concluded that surgery was needed and that the following specialists or specialists' services were requir ed: spinal instrumentation and fusion by a separate orthopedic surgeon, pulmonary clearance and follow-up fr om Dr. Cohen, consultation with the Pain Service, and a psychological assessment and follow-up. The specialists to whom he referred were also associated with Thomas Jefferson University Hospital and outside U.S. Healthcare's network.

Over the next few months, Pryzbowski sought to get U.S. Healthcare to approve the recommended surgery by Dr. Barolat and the related services. In the meantime, Pryzbowski was seen by in-network specialists, including Dr. Edward Barrett (a mental health specialist), Dr. Alexander Levin (a pain management specialist), and Dr. M.A. Sarraf (a pulmonary specialist) between February 19,

4

1994 and April 18, 1994, and they transmitted their reports thereafter. It is evident that this was not satisfactory to Dr. Barolat, because a handwritten note dated May 3, 1994, headed "Stephanie – Dr. Barolat's office," states "Dr. will not perform the surgery unless specials [sic] at Jefferson in consult. USHC will not approve." Appellees' App., Lang Certification, Ex. A. U.S. Healthcare authorized the out-of-network specialists' services and the back surgery on June 30, 1994, and Dr. Barolat performed the surgery on Pryzbowski on July 7, 1994. Unfortunately, Pryzbowski continued to suffer from severe back pain after the surgery. Dr. Barolat later opined "that the persistence of the excruciating pain . . . was most likely caused by the significant delay that occurred between the onset of the symptomatology and the surgical intervention." App. M, at M-4.

Pryzbowski filed a complaint, later amended, against U.S. Healthcare, Medemerge, and three physicians with Medemerge in the Superior Court of New Jersey. She asserts six counts against U.S. Healthcare, which allege that U.S. Healthcare "negligently and carelessly delayed in giving its approval for the necessary surgery which the plaintiff . . . urgently needed," causing Pryzbowski severe and permanent injury, emotional distress, and future expenses for medical care and treatment (Count One); that U.S. Healthcare's delay was arbitrary and capricious (Count Two); and that, by delaying its approval for the surgery, U.S. Healthcare "acted with a willful and wanton disregard for the harm that would likely result to the plaintiff " (Count Three). The complaint also asserts that U.S. Healthcare's delay in approving the surgery breached its health insurance contract with Pryzbowski (Count Four); that the delay in surgery approval was"in bad faith" (Count Five); and that U.S. Healthcare breached its duty to "screen, hire, train and employ capable and responsible individuals . . . to make thoughtful and reasonable decisions as to healthcare" (Count Seven).

In the five counts Pryzbowski asserts against Medemerge and/or the physician defendants, she alleges that Medemerge "negligently and carelessly delayed in authorizing and/or obtaining authorization from U.S.

Healthcare" for the surgery (Count Eight); that Medemerge, in failing to obtain authorization, "acted with a willful and wanton disregard for the harm that would likely result to the plaintiff " (Count Nine); that the physician defendants "negligently and carelessly delayed in authorizing and/or obtaining authorization" for the back sur gery (Count Ten); and that they "acted with a willful and wanton disregard" in delaying authorization (Count Eleven). Another count alleges that Medemerge breached its duty to "screen, hire and employ capable and responsible individuals to serve as its agent, servants, and/or employees" (Count Six).

U.S. Healthcare removed the case to the United States District Court for the District of New Jersey. On December 3, 1997, the District Court granted U.S. Healthcar e's motion to dismiss the counts against it (Counts 1-5, 7). Subsequently, Medemerge and the physician defendants moved for summary judgment on the remaining counts, which motion was granted on September 8, 1999. Pryzbowski now appeals both the December 3, 1997 dismissal and the September 8, 1999 summary judgment order. We have jurisdiction under 28 U.S.C. S 1291.

II.

DISCUSSION

A. Claims Against U.S. Healthcare

There are two separate but related pr eemption issues that arise under ERISA, both of which are pr esented in this case. The application of express preemption, set forth in S 514(a) of ERISA, arises in connection with Pryzbowski's claims against Medemerge and the physician defendants. Her claims against U.S. Healthcare raise the issue of complete preemption, a jurisdictional concept based on S 502(a) of ERISA.

We first consider Pryzbowski's challenge to the District Court's holding that removal was proper and that it had subject matter jurisdiction over the claims against U.S. Healthcare because they were completely pr eempted under S 502(a) of ERISA. Pryzbowski's complaint, originally filed in

6

state court, appeared on its face to allege only state causes of action and named as defendants parties who wer e not completely diverse from Pryzbowski, ther eby displaying no obvious basis for removal to federal court under 28 U.S.C. S 1441. In Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal., 463 U.S. 1, 9-10 (1983), the Supreme Court stated, "where ther e is no diversity of citizenship between the parties [as in Pryzbowski's case] . . . the propriety of removal turns on whether the case falls within the original `federal question' jurisdiction of the United States district courts."

Under the "well-pleaded complaint" rule, federal question jurisdiction exists only when an issue of federal law appears on the face of the plaintiff 's complaint. The anticipation that a defendant may raise a federal defense will not confer federal question jurisdiction. On the other hand, "any complaint that comes within the scope of [a] federal cause of action necessarily `arises under' federal law" and is therefore completely pr eempted. Franchise Tax Bd., 463 U.S. at 24. The paradigmatic example of this extraordinary preemptive force isS 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C.S 185. See Avco Corp. v. Aero Lodge No. 735, 390 U.S. 557 (1968). In Franchise Tax Board, the Court did not reach the question of complete preemption under ERISA because the claim asserted there was not within the original jurisdiction of the federal courts and therefore could not be removed by defendant to federal court. See 463 U.S. at 24-25.

It was in Metropolitan Life Ins. Co. v. T aylor, 481 U.S. 58 (1987), that the Supreme Court faced the question "whether or not the Avco principle can be extended to statutes other than the LMRA in order to recharacterize a state law complaint displaced by S 502(a)(1)(B) as an action arising under federal law." Id. at 64. After noting the similarity between the language of ERISA and that of the LMRA, the Court concluded that Congress intended thatS 502(a) of ERISA be given the same extraordinary pr eemptive force as had been given to S 301 of LMRA. See id.  at 65. This conclusion from the statutory language was confirmed not only by the statements of one of the sponsors of ERISA but also by the Conference Report, which stated that all suits

7

"to enforce benefit rights under the plan or to recover benefits under the plan . . . are to be r egarded as arising under the laws of the United States in similar fashion to those brought under section 301 of the Labor –Management Relations Act of 1947." H.R. Conf. Rep. No. 93–1280, at 327 (1974), reprinted in 1974 U.S.C.C.A.N. 5038, 5107. Following the decision in Metropolitan Life, there can be no question that "causes of action within the scope of the civil enforcement provisions of S 502(a)[are] removable to federal court." Metropolitan Life, 481 U.S. at 66.

We do not understand Pryzbowski to be challenging the principle that such claims are completely pr eempted but to be arguing that the claims she asserts against U.S. Healthcare were not removable because they did not fit within S 502(a). Section 502(a) allows a beneficiary or participant of an ERISA–regulated plan to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the ter ms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. S 1132(a)(1)(B). UnderS 502(a), a beneficiary may obtain accrued benefits due, a declaratory judgment about entitlement of benefits, or an injunction to require the administrator to pay benefits. See Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 53 (1987). It follows that if Pryzbowski's claims fall within the scope of ERISA's civil enforcement provisions, they are completely preempted.

This court has on several occasions consider ed whether a plaintiff 's claim against his or her HMO is completely preempted under ERISA. In Dukes v. U.S. Healthcare, Inc., 57 F.3d 350 (3d Cir. 1995), we distinguished between claims directed to the "quality of the benefits [plaintiffs] received" and claims "that the plans err oneously withheld benefits due" or that seek "to enfor ce [plaintiffs'] rights under the terms of their respective plans or to clarify their rights to future benefits." Id. at 356. We stated that claims that merely attack the quality of benefits do not fall within the scope of S 502(a)'s enforcement pr ovisions and are not completely preempted, whereas claims challenging the quantum of benefits due under an ERISA–regulated plan are completely preempted under S 502(a)'s civil enforcement scheme. See id. at 356–57. We held that, because the

8

plaintiffs in Dukes alleged that the HMO failed to exercise reasonable care in providing medical treatment, their claims were not completely preempted. See id. at 358.

Thereafter, in In re U.S. Healthcare, Inc., 193 F.3d 151 (3d Cir. 1999), we applied the quality-quantity distinction in determining whether claims by parents against U.S. Healthcare based on the death of their newbor n baby were completely preempted. In making that decision, we relied upon the distinction made in Dukes between"an HMO's role in `arranging for medical treatment' rather than its role as a plan administrator determining what benefits are appropriate." Id. at 162 (quoting Dukes, 57 F.3d at 360). We held that U.S. Healthcare's adoption of a policy of discharging newborn infants within 24 hours after their delivery was essentially a medical determination that could be subject to a state-law medical malpractice action. See id. at 162-63. We also held that the HMO's alleged negligence in selecting, training, and supervising medical personnel implicated the quality of medical treatment. See id. at 163-64. Therefore, we concluded that none of the claims were completely preempted and we directed that the case be remanded to state court. See id. at 162-65.

Most recently, in Lazorko v. Pennsylvania Hospital, 237 F.3d 242 (3d Cir. 2000), we again applied the distinction between claims raising quality of care issues and claims raising quantity of benefits issues. Lazorko alleged that financial disincentives imposed by the HMO discouraged medical providers from hospitalizing a mentally ill beneficiary who later committed suicide. W e decided that this was a quality of care claim because "the denial of [the beneficiary's] request for hospitalization occurred in the course of a treatment decision, not in the administration of the [plaintiff 's and beneficiary's] plan generally." Id. at 250. Thus, we held that the plaintiffs' claim was not completely preempted under S 502(a).

Though the quality-quantity distinction was helpful in those cases, we have acknowledged that the distinction would not always be clear. See Dukes, 57 F.3d at 358. We recognized that there might be a situation where the quality of the medical care provided would be so deficient that the beneficiary essentially would not have received any health

9

care benefit at all. See id. And in In re U.S. Healthcare, we noted that making the quality-quantity distinction would be particularly difficult when an HMO has acted as both a plan administrator and a provider of medical services. See 193 F.3d at 162.

The recent Supreme Court decision in Pegram v. Herdrich, 530 U.S. 211, 120 S. Ct. 2143 (2000), suggests preferable terminology. Although that case concerned fiduciary acts under ERISA and not preemption, the distinction made there between "eligibility decisions," which "turn on the plan's coverage of a particular condition or medical procedure for its treatment," and "treatment decisions," which are choices in "diagnosing and treating a patent's [sic] condition," 120 S. Ct. at 2154, is equally applicable for complete preemption analysis. Regardless of the language used, the ultimate distinction to make for purposes of complete preemption is whether the claim challenges the administration of or eligibility for benefits, which falls within the scope of S 502(a) and is completely preempted, or the quality of the medical tr eatment performed, which may be the subject of a state action.

This court has not had occasion to consider how a claim that the HMO or plan administrator delayed in the approval of benefits should be treated under ERISA. It is evident that a claim alleging that a physician knowingly delayed in performing urgent surgery on a patient whose appendix was about to rupture would relate to the quality of care, and not be subject to removal on the basis of complete preemption. On the other hand, a claim alleging that an HMO declined to approve certain requested medical services or treatment on the ground that they were not covered under the plan would manifestly be one regarding the proper administration of benefits. Such a claim, no matter how couched, is completely preempted and removable on that basis. See Dukes, 57 F.3d at 356 (noting that a claim that the plans erroneously withheld benefits due would be completely preempted); Jass v. Prudential Health Care Plans, Inc., 88 F.3d 1482, 1488-89 (7th Cir. 1996) (holding that a claim against an HMO's utilization review decision was completely preempted by ERISA).

10

In analyzing whether a claim falling between these poles is completely preempted, it is necessary to r efer to S 502(a). As the Court stated in Metropolitan Life , "Congress has clearly manifested an intent to make causes of action within the scope of the civil enforcement pr ovisions of S 502(a) removable to federal court." 481 U.S. at 66. Accordingly, we must examine Pryzbowski's claims against U.S. Healthcare to determine whether they could have been the subject of a civil enforcement action underS 502(a).

Counts One through Five of Pryzbowski's complaint allege that U.S. Healthcare negligently and car elessly delayed approval of her surgery with Dr . Barolat, acted in an arbitrary and capricious manner in doing the same, acted in willful and wanton disregard of her health, acted in bad faith, and breached her health insurance contract. Underlying these allegations of delay is the policy adopted by U.S. Healthcare (and many other HMOs) r equiring beneficiaries either to use in-network specialists or to obtain approval from the HMO for out-of-network specialists. These activities fall within the r ealm of the administration of benefits.

Had Pryzbowski sought to accelerate U.S. Healthcar e's approval of the use of out-of-network pr oviders, she could have sought an injunction under S 502(a) to enforce the benefits to which she was entitled under the plan, thereby using the provisions of the civil enfor cement scheme provided by Congress. There have been numerous cases in which the courts have issued preliminary injunctions under similar circumstances. See, e.g., Marro v. K-III Communications Corp., 943 F. Supp. 247 (E.D.N.Y. 1996) (granting preliminary injunction to compel plan administrator to precertify high dosage chemotherapy); Mattive v. Healthsource of Savannah, Inc., 893 F. Supp. 1559 (S.D. Ga. 1995) (granting preliminary injunction enjoining plan administrator from denying coverage for high-dose chemotherapy); Dozsa v. Crum & Forster Ins. Co., 716 F. Supp. 131 (D.N.J. 1989) (granting pr eliminary injunction enjoining plan administrator from denying coverage for autologous bone marrow transplant treatment).

Pryzbowski's final claim against U.S. Healthcar e (Count Seven) alleges that it failed properly to hir e, train, and

11

supervise its employees "to make thoughtful and r easonable decisions as to healthcare." Amended Complaint, Count 7. Although ostensibly directed at the provision of medical treatment, a federal court may "look beyond the face of the complaint to determine whether a plaintif f has artfully pleaded his suit so as to couch a federal claim in terms of state law," Jass, 88 F.3d at 1488; accord Parrino v. FHP, Inc., 146 F.3d 699, 704 (9th Cir. 1998); cf. Franchise Tax Bd., 463 U.S. at 22 (noting that "a plaintif f may not defeat removal [to federal court] by omitting to plead necessary federal questions in a complaint"). Inasmuch as Pryzbowski has not alleged that U.S. Healthcare or its employees engaged in any medical treatment with r egard to her, the alleged negligence by U.S. Healthcare in the hiring, training, and supervising of its employees necessarily concerns the administration of her benefits, U.S. Healthcare's only role in this case. It follows that Count Seven is also completely preempted under S 502(a) of ERISA.

Pryzbowski contends that her claims are analogous to the claims made in Dukes and In re U.S. Healthcare, where we held that complete preemption was inapplicable and removal improper. In both cases, we recognized that the HMO had assumed the dual role of an administrator of benefits and a provider of medical services. In In re U.S. Healthcare, we held that the HMO's policy to discharge newborn infants within 24 hours was essentially a "medical determination of the appropriate level of care." 193 F.3d at 163. We also held that the claim that the HMO was negligent in failing to provide an in-home visit by a pediatric nurse, despite having given assurances that such a visit would be provided, was directed at the HMO's function as medical provider. See id. at 164. Therefore, the plaintiffs' claims alleged medical malpractice and were not completely preempted by ERISA. In Dukes, the plaintiffs' claims centered on "the low quality of the medical treatment that they actually received." 57 F.3d at 357. They argued that the HMO was liable under an agency theory and also directly responsible for negligence in selecting, retaining, screening, monitoring and evaluating the personnel who actually provided the medical services. See id. at 352. We held that those claims did not involve failure

12

to provide benefits due under the ERISA plan and therefore were not completely preempted.

In the case before us, as we note above, Pryzbowski's claims against U.S. Healthcare are limited to its delay in approving benefits, conduct falling squar ely within administrative function. A holding that Pryzbowski's claims against U.S. Healthcare are not completely preempted would open the door for legal challenges to cor e managed care practices (e.g., the policy of favoring in-network specialists over out-of-network specialists), which the Supreme Court eschewed in Pegram. Cf. 120 S. Ct. at 2156-57 (rejecting claims attacking financial incentives behind HMO structure, in light of congr essional policy of promoting HMOs). We conclude that the District Court did not err in holding that the claims Pryzbowski asserts against U.S. Healthcare are completely pr eempted. It follows that the District Court properly exer cised subject matter jurisdiction over the case and dismissed the claims against U.S. Healthcare.

We are not unaware that our holding that U.S. Healthcare will not be required to explain or defend the delay in provision of services to Pryzbowski may leave her, and other beneficiaries, without effective r elief for the improper administration of benefits. The delay attendant on the required preauthorization by HMOs has been a matter of public concern. In fact, this has led the Department of Labor recently to publish a long pending final rule that requires that claims seeking pretr eatment authorization for medical services must be decided within 15 days and that imposes other stringent time limits on appeals fr om adverse decisions. See 65 Fed. Reg. 70,245 (Nov. 21, 2000). While the new rule applies only to claims filed on or after Jan. 1, 2002, it should serve to give notice to health car e administrators that ERISA not only provides pr otection from litigation arising from benefits administration but imposes certain responsibilities with r espect to such administration.

B. Claims Against Medemerge and the Physician Defendants

1. Jurisdiction

Unlike U.S. Healthcare, Medemerge and the physician defendants do not contend that the claims against them are

13

completely preempted under S 502(a). Neither can their anticipated defense of express preemption under S 514(a) be the basis for removal of these claims. See Franchise Tax Bd., 463 U.S. at 23-27. As we stated in Dukes, "[w]hen the doctrine of complete preemption does not apply, but the plaintiff 's state claim is arguably preempted under S 514(a), the district court, being without removal jurisdiction, cannot resolve the dispute regarding preemption." Dukes, 57 F.3d at 355. Federal jurisdiction over Pryzbowski's claims against Medemerge and the physician defendants, if it is to be sustained, must be based on another gr ound.

In this case, the District Court did not rely on S 502(a) preemption for its jurisdiction over these defendants but instead exercised supplemental jurisdiction under 28 U.S.C. S 1367. That section authorizes a district court to exercise "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. S 1367(a). W e have interpreted this provision to require the following: (1) " `[t]he federal claims must have substance sufficient to confer subject matter jurisdiction;' " (2) " `[t]he state and federal claims must derive from a common nucleus of operative fact;' " and (3) " `the plaintiff 's claims [must be] such that [s/]he would ordinarily be expected to try them all in one judicial proceeding.' " In re Prudential Ins. Co. Am. Sales Practices Litig., 148 F.3d 283, 302 (3d Cir . 1998) (quoting United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966), which sustained the constitutionality of pendent jurisdiction).

We have already determined that the District Court had subject matter jurisdiction over Pryzbowski's claims against U.S. Healthcare. Moreover, Pryzbowski's claims against Medemerge and the physician defendants ar e derived from the same factual predicate as her claims against U.S. Healthcare, as all her claims stem from the treatment she received from all of the defendants in r esponse to her complaint of back pain and the delay she experienced in securing the approval for the out-of-network physicians and services that Dr. Barolat believed wer e necessary. Under these circumstances, it would be expected that all of

14

Pryzbowski's claims against the defendants would be combined in one judicial proceeding. Ther efore, the District Court had the authority for its exercise of supplemental jurisdiction over the claims against Medemer ge and the physician defendants.

Pryzbowski argues that once the claims against U.S. Healthcare were dismissed, the District Court should have remanded her claims against the other defendants to state court. That was certainly an option for the District Court but not one it was obliged to take. In New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc., 101 F.3d 1492, 1506 (3d Cir. 1996), we stated that "where the jurisdiction-conferring party drops out and the federal court retains jurisdiction over what becomes a state law claim between non-diverse parties, the bounds of Article III have not been crossed." In such situations, district courts have discretion to continue exercising supplemental jurisdiction. See id.

Pryzbowski's challenge to the District Court's failure to remand seems to be directed exclusively to a lack of jurisdiction in the District Court. She has given us no persuasive reason why the District Court's decision to exercise supplemental jurisdiction was an abuse of its discretion. The District Court had become fully familiar with the factual background and the positions of the parties, and we see no reason why it should not have continued to exercise jurisdiction over Pryzbowski's claims against Medemerge and the physician defendants. We certainly cannot conclude that its decision was an abuse of discretion.

2. Summary Judgment

Once the District Court dismissed the claims against U.S. Healthcare (Counts 1-5 and 7) and Counts 9 and 11 were dismissed without opposition, see Pryzbowski, 64 F. Supp. 2d at 363 n.2, the parties focused their discovery on Counts 6 and 8 against Medemerge and Count 10 against Doctors Pilla and Ellis.1 The r emaining defendants then

_____

1. The District Court dismissed the claims against Dr. Sgambelluri because Pryzbowski's brief in that court opposing summary judgment made no mention of that defendant. See Pryzbowski, 64 F. Supp. 2d at 363 n.1. Her brief in this court does not mention that portion of the District Court's opinion, and we conclude that she does not challenge it.

15

moved for summary judgment. In support of their motion, defendants filed the certification of their counsel, Joseph R. Lang, who attached extensive documentary evidence and references to certain depositions. These documents set forth Pryzbowski's medical history in connection with her complaints of back pain and efforts to obtain the necessary treatment and services.[2] The District Court noted that "plaintiff has not provided this court with any evidence whatsoever in opposing this motion but merely has referenced defendants' exhibits fr om time to time," and that it was "unable to consider unsupported conclusory allegations." Id. at 364 n.6.

The District Court viewed the defendants' motion for summary judgment as having two bases. The first was that Pryzbowski's claims were preempted by S 514(a) of ERISA. The second was that Pryzbowski failed to state a claim for which relief can be granted. We consider them in turn.

a. Express Preemption by S 514(a)

Section 514(a), the express preemption pr ovision of ERISA, provides that ERISA "shall supersede any and all State laws insofar as they . . . relate to any employee benefit plan" covered by the statute. 29 U.S.C. S 1144(a). ERISA also includes a saving clause protecting from preemption state laws regulating insurance, banking, or securities. See 29 U.S.C. S 1144(b)(2)(A). As we have explained, "[u]nlike the scope of S 502(a)(1)(B), which is jurisdictional and creates a basis for r emoval to federal court, S 514(a) . . . governs the law that will apply to state law claims, regardless of whether the case is brought in state or federal court." Lazorko, 237 F .3d at 248.

In one of the early cases to come before the Supreme Court concerning the express preemption provision, the Court stated that a law "relates to" an employee benefit plan "if it has a connection with or refer ence to such a plan." Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 96–97 (1983). The Court thereafter recognized that more guidance

_____

2. They are reviewed in detail in the District Court's opinion granting summary judgment, see Pryzbowski, 64 F . Supp. 2d at 363–66, and need not be reprised.

16

was needed in drawing the line between what was preempted and what was not. It attempted to do that in New York State Conference of Blue Cr oss & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645 (1995) [hereafter Travelers], where the Court stated that it would inquire into "the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive." Id. at 656. To that end, the Court noted that Congress intended:

> to ensure that plans and plan sponsors would be subject to a uniform body of benefits law; the goal was to minimize the administrative and financial bur den of complying with conflicting directives among States or between States and the Federal Government . . . , [and to prevent] the potential for conflict in substantive law . . . requiring the tailoring of plans and employer conduct to the peculiarities of the law of each jurisdiction.

Id. at 656-57 (quoting Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 142 (1990) (citation omitted) (ellipses and brackets in original)). Thus, the basic objective of the express preemption provision was"to avoid a multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans." Id. at 657.

In Travelers and several cases ther eafter, the Court held that the challenged state statutes were not pr eempted because they were laws of general application that were neither directed to ERISA plans nor inter fered with their administration. For example, in Travelers the Court held that a statute that imposed surcharges on hospital rates for patients with commercial insurance purchased by ERISA plans, which was intended to help Blue Cross/Blue Shield plans, had only an indirect economic ef fect on ERISA plans and was not expressly preempted by S 514(a). See id. at 658-62; see also California Div. of Labor Standards Enforcement v. Dillingham Constr., 519 U.S. 316 (1997) (state prevailing wage law does not "r elate to" employee benefit plans and is not preempted by ERISA where statute is indifferent to ERISA coverage); De Buono v. NYSA-ILA Med. and Clinical Servs. Fund, 520 U.S. 806 (1997) (generally applicable gross receipts tax on health care

17

facilities not preempted despite some bur den on administration of ERISA plans); but see Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504 (1981) (state compensation act barring offset of workers' pension benefits by compensation benefits preempted).

The issue of express preemption arises in other contexts than challenges to state statutes. One of the most frequent is the reliance by HMOs and insurance companies on S 514(a) in defending suits brought by beneficiaries arising out of the denial of plan benefits. This line of cases stems from the Supreme Court's decision in Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41 (1987), where a beneficiary of an ERISA plan sued the insurance company that cover ed his employer's long-term disability employee benefit plan, alleging it improperly denied his claim for long-term disability benefits. He claimed tortious br each of contract, breach of fiduciary duties, and fraud in the inducement. Plaintiff sought to avoid preemption under S 514(a) by trying to fit some of his claims into the saving clause exception for state laws regulating insurance, but the Court rejected that effort. Instead, the Court viewed the common law causes of action raised in plaintiff 's complaint as based on alleged improper processing of a claim for benefits under an employee benefit plan, stated that such claims "undoubtedly meet the criteria for pre-emption under S 514(a)," and held that the suit could not proceed because of the "expansive sweep of the pre-emption clause." Id. at 47-48.

Thus, suits against HMOs and insurance companies for denial of benefits, even when the claim is couched in terms of common law negligence or breach of contract, have been held to be preempted by S 514(a). See, e.g., Bast v. Prudential Ins. Co. of Am., 150 F.3d 1003, 1007-08 (9th Cir. 1998) (holding that S 514(a) preempted, among other things, a claim alleging bad faith denial of benefits); Tolton v. American Biodyne, Inc., 48 F.3d 937, 941-43 (6th Cir. 1995) (holding that S 514(a) preempted claims for wrongful death, medical malpractice, and insurance bad faith based on a refusal to authorize treatment); Corcoran v. United HealthCare, Inc., 965 F.2d 1321, 1331-34 (5th Cir. 1992) (holding that S 514(a) preempted a wr ongful death action based on the negligent denial of benefits).

18

The rationale for these holdings is that the decision whether a requested benefit or service is covered by the ERISA plan falls within the scope of the administrative responsibilities of the HMO or insurance company, and therefore "relates to" the employee benefit plan. The same rationale has been applied by courts holding that suits against HMOs for delay in authorizing benefits wer e preempted under S 514(a). For example, in Kuhl v. Lincoln Nat'l Health Plan of Kan. City, Inc., 999 F .2d 298, 302–03 (8th Cir. 1993), the court considered a claim that the HMO canceled the beneficiary's surgery in an out-of-network hospital, thereby delaying his ability to r eceive treatment and leading to his death. Although the complaint br ought by his survivors alleged common law claims and characterized the HMO's actions as malpractice, the court viewed the claim as based on improper pr ocessing of medical benefits, and therefore expr essly preempted by S 514(a). See id. Likewise, in Spain v. Aetna Life Ins. Co., 11 F.3d 129, 131–32 (9th Cir. 1993), the court held that a wrongful death claim based on the HMO's delay in authorizing cancer treatment was expressly preempted because it dealt with the negligent administration of benefits.

In contrast, claims challenging the quality of car e are not preempted by S 514(a). As previously discussed, our decisions in Dukes, In re U.S. Healthcare, and Lazorko made clear our view that claims based on medical treatment decisions are still state law claims. In Dukes, we examined the legislative history of ERISA and found nothing suggesting that Congress intended "to control the quality of the benefits received by plan participants[,] . . . a field traditionally occupied by state regulation." 57 F.3d at 357. We explained that:

> When Congress enacted ERISA it was concer ned in large part with the various mechanisms and institutions involved in the funding and payment of plan benefits. That is, Congress was concer ned "that owing to the inadequacy of current minimum[financial and administrative] standards, the soundness and stability of plans with respect to adequate funds to pay promised benefits may be endangered." S 2, 29 U.S.C.

19

S 1001(a). Thus, Congress sought to assur e that
promised benefits would be available when plan
participants had need of them and S 502 was intended
to provide each individual participant with a r emedy in
the event that promises made by the plan wer e not
kept.

Id. (brackets in original).

We followed that view in In re U.S. Healthcare, 193 F.3d
151, where we held that claims against the HMO resulting
from its adoption of a policy to dischar ge newborns from
the hospital within 24 hours after birth went to the quality
of care provided. They were ther efore to be evaluated as an
ordinary state-law tort claim for medical malpractice. There
is no reason why the distinction between quality of care
issues and benefits administration issues made in those
cases, which arose in the context of complete preemption
under S 502(a), would not be equally applicable to express
preemption under S 514(a).

Moreover, there is a strong suggestion in Pegram that
claims based on medical treatment decisions r emain
outside the preemptive effect of ERISA. In holding that
mixed eligibility/treatment decisions made by an HMO are
not encompassed by the fiduciary duties imposed by
ERISA, the Court made clear its view that ERISA was not
designed to allow plan participants "to bring malpractice
actions in the guise of federal fiduciary br each claims
against HMOs." 120 S. Ct. at 2158. The Court took a dim
view of an interpretation that would lead to ERISA
preemption covering "the subject of a state-law malpractice
claim." 120 S. Ct. at 2158.

The District Court here recognized that a malpractice
claim by Pryzbowski against Medemerge and the physician
defendants would not be preempted. However , that court,
after conducting a comprehensive review of the relevant
cases, concluded that "[i]t is clear that plaintiff 's claims, at
their core, challenge the poor administration of her plan --
the failure to promptly approve the r equest for Dr. Barolat
to perform the surgery -- rather than the quality of care
she received. " 64 F. Supp. 2d at 369. The District Court
also stated that "a claim for negligent delay in the

20

utilization review, or pre-authorization process, even if alleged as a state law violation against the physician, would, at the very least, `relate to' an ERISA plan and, thus, be preempted." Id. at 367. W e cannot agree that all of Pryzbowski's claims against Medemerge and the physician defendants should be characterized as "relating to" the administration of her plan.

It is true that Pryzbowski has not alleged that the physician defendants at Medemerge failed to diagnose or properly treat her back pain. She concedes that those physicians found that her problem requir ed specialty care and referred her to an orthopedic sur geon, a neurosurgeon, and eventually the out-of-network neurosur geon who had originally performed surgery on Pryzbowski. On the other hand, Pryzbowski's claims against Medemerge and the physician defendants are not based on a denial of benefits and therefore differ from the typical administration of benefits claims against HMOs. Medemerge and the physician defendants do not contend that they acted as U.S. Healthcare's agent in the administration of the plan that covered Pryzbowski. Admittedly, they did not have the responsibility to make coverage decisions. Indeed, they argue in their brief that they had no power to authorize services by out-of-network physicians and that those questions -- which have been held to be administrative as to HMOs -- were always relayed to U.S. Healthcare. As these defendants disclaim any administrative authority or responsibility with respect to the plan, it follows that the preemption afforded by S 514(a) for claims "relating to" a plan is inapplicable.

Our decisions have not focused on the extent to which the scope of a physician's responsibility to a patient goes beyond the mere treatment of that patient's medical complaint. It remains unclear whether the New Jersey Supreme Court would include within the physicians' duty of care the processing of their patients through the office, including matters such as the completion of for ms, referral to other physicians, arrangements for laboratory tests, and other general office procedures that may be necessary for the complete care of the patient.

21

We note that in Nealy v. U.S. Healthcar e HMO, 93 N.Y.2d 209, 711 N.E.2d 621 (1999), a primary care physician allegedly delayed in submitting to the HMO a r equest for authorization for a beneficiary to see an out-of-network cardiologist. The HMO eventually denied authorization, and the beneficiary died before seeing an in-network cardiologist. The New York Court of Appeals held that the wrongful death and negligence claims br ought by the beneficiary's wife were not preempted by S 514(a). See id. at 219, 711 N.E.2d at 625. The court stated that "[p]laintiff 's allegations of negligent medical care do not`relate to' the administration of an ERISA plan merely because they refer to [the physician defendant's] delay in submitting the US Healthcare form seeking a referral to [the out-of-network cardiologist]. Plaintiff does not allege that [the physician defendant] is responsible for delay caused by US Healthcare's decision-making process with respect to coverage or benefits. Her claim against [the physician defendant] is that he failed to take timely action to treat her husband." Id. at 219-20, 711 N.E.2d at 625 (footnote omitted).

Nealy stands for the proposition that under New York law the physician's duties in providing car e to his/her patients may be broader than the mere medical tr eatment decision. Pryzbowski's complaint may be fairly read to allege that Medemerge and the physician defendants did not adequately perform or supervise the per formance of some of the office functions that may be part of patient care. On the sparse record before us and in view of the inadequate briefing on this point before us and in the District Court, we are not prepared to state as a matter of law that there is no conceivable malpractice claim against these defendants under New Jersey law, and hence cannot agree that all of the claims against them are pr eempted under S 514(a).3

_____

3. There are a number of pending motions. The appellees have moved to dismiss the appeal or in the alternative to strike the appellant's brief and
appendix because Pryzbowski included in the Joint Appendix excerpts of the deposition testimony of Dr. Linda Peeno, her medical ethics expert, Anita McGinley, former HMO coordinator at Medemerge, Sandra Coles-

b. Failure to State a Claim

Our decision that Pryzbowski's claims against Medemerge
and the physician defendants are not expr essly preempted
does not mean that they necessarily survive dismissal
under summary judgment. Only after the District Court
determines the scope of New Jersey malpractice law will it
be able to decide whether Pryzbowski has offer ed sufficient
evidence to make a genuine issue of material fact that
Medemerge and the physician defendants failed to meet the
applicable standard.

There is one claim, however, that we ar e in a position to
resolve. The District Court held that Pryzbowski failed to
state a claim for negligence upon which relief can be
granted. The District Court equated the negligence claim
with Pryzbowski's contention that the physician defendants
violated a state common law "duty to advocate" to the HMO
so as to expedite the approval of her sur gery. Although we
read Pryzbowski's negligence claim against Medemerge and
the physician defendants as broader than the claimed duty
to advocate, we agree with the District Court's analysis of
the latter.

The District Court reasoned that a state law claim for
negligence must allege "(1) a duty of car e owed by
defendant to plaintiff; (2) a breach of that duty by
defendant; and (3) an injury to plaintiff pr oximately caused
by defendant's breach." Endre v. Arnold, 300 N.J. Super.
136, 142, 692 A.2d 97, 100 (App. Div. 1997). "Whether a

_____

Forbes, nurse employed by U.S. Healthcare to r eview out-of-network
authorizations, and Dr. John Pilla of Medemer ge that were not put in the
record developed in the District Court. In turn, Pryzbowski has moved to
expand the record to include portions of the depositions that were not
before the District Court, or, in the alternative, that we ignore the
references to the material at issue. W e have consistently stated that the
courts of appeals can only "review the decision below based on the
record that was before the district court." Federal Ins. Co. v. Richard I
Rubin & Co., Inc., 12 F.3d 1270, 1284 (3d Cir. 1993) (quotation omitted).
Therefore, we have not considered these deposition excerpts in making
our decision. On remand, the District Court can reconsider whether the
excerpts are material to its inquiry. W e deny both the motion to dismiss
the appeal and deny the motion to expand the r ecord.

23

duty exists is solely a question of law to be decided by a court." Id. The Medical Society of New Jersey filed an amicus curiae brief in this court to advance its position that a physician does not, and should not, have a"duty to advocate" with a patient's health care plan when it denies or delays treatment the physician has r equested. Pryzbowski attempts to identify such a duty thr ough her medical ethics expert, the Hippocratic Oath, and the American Medical Association's Code of Medical Ethics. The Medical Society, besides providing the surprising information that the Hippocratic Oath is not universally used throughout the medical schools of this country and that there are at least ten versions of that oath, asserts that there is no "legal duty that subjects physicians who have committed no malpractice to liability for injuries r esulting from delays in benefit determinations by plan administrators over whom the physicians have no control." Br. of Medical Society at 8-9 (emphasis in original).

We take no position whether New Jersey, or any other state, should impose such a duty, as that is not within our domain. On the issue before us, we agree that physicians, under existing New Jersey law, have no duty to advocate on behalf of their patients to an HMO or any health insurance plan for the timely approval of benefits. Cf. Baxt v. Liloia, 155 N.J. 190, 202, 714 A.2d 271, 277 (1998) (noting that state disciplinary codes for attorneys "ar e not designed to establish standards for civil liability"); Pierce v. Ortho Pharmaceutical Corp., 84 N.J. 58, 76, 417 A.2d 505, 514 (1980) (concluding that the Hippocratic Oath "does not contain a clear mandate of public policy" upon which a cause of action may be based). We ther efore agree with the District Court that Pryzbowski has failed to state a claim on her duty to advocate allegation.

III.

CONCLUSION

In summary, we hold that the District Court did not err in holding that Pryzbowski's claims against U.S. Healthcare were completely preempted; that New Jersey does not

24

recognize a physician's duty to advocate; and that the other claims asserted by Pryzbowski against Medemer ge and the physician defendants are not expressly pr eempted as a matter of law but require additional consideration by the District Court.

We note that, as a result of the enactment of ERISA and the substantial changes in the delivery of health care, new legal issues regarding rights and r esponsibilities have arisen. The law remains, to some extent, in a state of flux. It is for Congress and not the courts to decide whether it is sound policy for our health care system to limit or channel the relief available or whether ERISA should allow for broader remedies for beneficiaries in the world of managed care.

For the reasons set forth above, we will affirm the December 3, 1997 order dismissing the claims against U.S. Healthcare. We will affirm that portion of the order of September 8, 1999 dismissing the claims against Medemerge and the physician defendants insofar as they allege duty to advocate, and we will vacate the r emainder of that order and remand to the District Court for further proceedings in accordance with this opinion.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

25